Marshall, Ch. J.,
 

 after stating the facts of the *2061 caseJ as above, delivered the opinion of the court as follows : — *The -* question submitted to the consideration of the court is this : is the assured entitled to recover for a partial or for a total loss ?
 

 In support of the claim for a total loss, two points have been made : 1st. That the state of information at the time of the abandonment, not the state of the fact, must decide the right of the assured to abandon. If this be otherwise, then, it is contended, 2d. That the right to abandon is coextensive with the detention, which continued until restitution was made in fact, and that restitution in fact, though made on the same day, was posterior in point of time to the abandonment.
 

 1. Does the right to abandon depend on the fact, or on the information of the parties ? The right to abandon is founded on an actual or legal total loss. It appears to the court, to consist with the nature of the contract, which is truly stated to be a contract of indemnity, that the real state of loss, at the time the abandonment is made, is the proper and safe criterion of the rights of the parties. Might they depend absolutely on the state of in
 
 *123
 
 formation, a seizure which scarcely interrupted the voyage might be, and frequently would be, converted into a total loss, and the contests respecting the real state of information might be endless. Intelligence of capture and of restitution might be received at the same time, and the insured might suppress the one and act upon the other.
 

 This point came under the consideration of the court in the case of
 
 Rhinelander
 
 v.
 
 Insurance Company of
 
 Pennsylvania, in which case, it was said, that “ where a belligerent has taken full possession of a vessel as prize, and continues that possession, to the time of the abandonment, there exists, in point of law, a total loss.” The court, in delivering this opinion, understood itself to require, that the continuance of the possession *up to p ^ the time of the abandonment, or a technical total loss incurred, not- *■ withstanding the restoration, was necessary to justify a recovery as for a total loss.
 

 In considering the second point, the court proceed to inquire, whether the technical total loss on which the right to abandon depended, was terminated by the decree of restitution, or continued until that decree was carried into execution, and restitution was made in fact ?
 

 The real object of the policy is not to effect a change in property, but to indemnify the insured. Whenever, therefore, only a partial loss is sustained by one of the perils insured against, the original owner of the property retains it, prosecutes his voyage, and recovers for his partial loss. But the voyage may be really broken up, without the destruction of the vessel and cargo. A detention by a foreign prince, either by embargo or capture, may be of such long duration as to defeat the voyage. This is a peril insured against, and of its continuance, no certain estimate can be,made. In the case of capture, it is, for the time, a total loss, and no person can confidently say that the loss will not finally be total. So, of an embargo : its duration cannot be measured, and it may destroy the object of the voyage. These detentions, therefore, are, for the time, total losses, and they furnish reasonable ground for the apprehension, that their continuance may be of such duration as to break up the voyage, or ruin the assured, by keeping his property out of his possession. Such a case, therefore, upon the true principles of the contract, has been considered as justifying an abandonment, and a recovery for a total loss.
 

 But when a final decree of restitution, from which it is admitted that no appeal lies, has been awarded, the peril is over. On no reasonable calculation, can it be supposed, that such a delay of restitution will ensue, as from that time to break. up the voyage. There is no reason to presume a subsequent detention on the part of *the foreign prince. There is no mo- p tive for such detention. The master of the captured vessel may per- *- haps not be ready to receive possession, and the delay may proceed from him. At any rate, without some evidence that the peril was not actually determined, the court cannot consider it as continuing, after the sentence was pronounced. A technical total loss originates in the danger of a real total loss. The court cannot suppose such a danger to have existed, after a final sentence of acquittal, unless some order of court relative to a reconsideration could be shown, or it should appear, that some other delays were interposed by the court which had pronounced the sentence, or by the sovereign of the captor.
 

 
 *124
 
 Had the facts on which this question depends been known at New York and Philadelphia, as they occurred, could it have been said, that there existed a technical total loss ? After a decree of restitution, could it be said, that while means were taking to carry that decree into execution, while the mandate for restitution was passing from the court to the vessel, the assured had a right to elect to consider his vessel as lost, and to abandon to the underwriters ? To this court, it seems, that the right to make such an election, at such a time, would be inconsistent with the spirit of the contract, and that the technical total loss was terminated by the decree of restitution, unless something subsequent to that decree could be shown, to prove the continuance of the danger, or of an adversary detention.
 

 Nothing in this opinion is intended to extend to the case where a cargo may be lost, without the loss of a vessel.
 

 There is no error in the judgment of the circuit court of Pennsylvania, and it is to be affirmed, with costs.
 

 Judgment affirmed.