The Court took time for advisement, and their opinion was after-wards delivered by
Parsons, C. J.
[After stating the facts in the case.] Upon these facts the plaintiff claims to recover a total loss, because the loss was once total; and if it was by any subsequent events turned into a partial loss, he had no intelligence of those events when he made the offer to abandon; and also because the total loss was not in fact reduced to a partial loss by any subsequent events before he made the offer.
[ * 229 ] *The defendants admit a partial loss, but deny a total loss, because the total loss had in fact become a partial loss by subsequent events, before the offer to abandon, although the owner had received no intelligence of them.
By the capture, detention, and suit, in the Admiralty, to obtain a condemnation of the teas, there was a constructive total loss of *205 the plaintiff’s property; and if the suit had been depending when he offered to abandon, it is admitted by the defendants that the plaintiff ought to recover a total loss. When he offered to abandon, he had intelligence of the capture, detention, and pendency, of the suit; but, while the intelligence of these facts was travelling to him, a restoration of his property was decreed to him, which he had in fact received, it is said, by his agent, Wilson; but of this restitution and receipt he had no intelligence, when he offered to abandon.
These events, of which neither party had knowledge, it is said oy the defendants, must operate upon the rights of the parties, and will defeat the election to abandon, which the facts known might have vested in the plaintiff. And the decision of the Supreme National Court in the case of Marshall vs. the Delaware Insurance Company, not yet reported, is cited in point.
Several objections of much weight have been urged against this position of the defendants, resulting from the nature of insurance, and the usage of merchants. It is said that in making the contract of insurance, the information of the parties, and not the facts, always govern; that if the risk on the property to be insured is in fact terminated, either by a safe arrival, or by an absolute total loss, at the time of the insurance, yet if the parties were not informed of those facts, the policy will be valid; that mercantile convenience requires that some rule should be settled, by which the parties may know when the owner may elect to abandon, because the right of election, when once existing, is a vested right; but" if the owner cannot govern himself by his intelligence, but must be governed by facts, of which he cannot have knowledge, the parties cannot know, in most cases, whether he has a right to abandon at the time he makes the offer; that by law the owner must make his election within * a reasonable time after he has intelli- [ * 230 ] gence of a constructive total loss, or he loses his right to abandon; his right must therefore depend upon the facts of which he has intelligence, and not upon facts which may afterwards exist, but of which he can have no knowledge when he is obliged to make his election; that a contingent right to abandon is not recognized by the law merchant; for an owner, calculating on the danger to which his ship is exposed, cannot elect to abandon on the contingency that she is lost, which may prove to be the fact, and avail himself of his offer to abandon, when subsequent information shall prove that his right to abandon existed when the offer was made; but he must have intelligence of the loss before he is admitted to his election of abandoning.
There may arise great inconvenience from the defendants’ posi *206 tian; for if the information of the parties is not to decide on the right to abandon, neither party, after the offer is made, will give any directions for the management or preservation of the property insured, as the offer to abandon will not be waived by the owner, nor admitted by the assurer, until future intelligence shall ascertain the state of the property when the offer to abandon was made.
It is also the usage of merchants to consider the right to abandon as depending on the facts known, and upon this principle premiums of insurance have been regulated.
There is no adjudged case directly in point in our books; but it is remarkable that there is no case to be found, where a total loss has been held changed to a partial loss, unless the owner had notice of the change before his offer to abandon. In an action against The Massachusetts Fire and Marine Insurance Company, in the United States Circuit Court, where the property insured was captured and detained at Gibraltar for some months, but liberated before the offer to abandon, although the liberation was unknown to the parties, one of the counsel for the defendants made the present objection to a total loss, because the parties are to be governed by the facts existing at the time when the offer to abandon is made, and not by the facts of which they have intelligence; but as the other counsel for the defendants admitted that it was the usage of merchants to be governed by the facts, of which intel[*231 ] ligence had been received, the * question was not discussed at the bar, and the court, in directing the jury, considered the law to be according to the usage.
But we do not think it necessary to decide this question, because we are not satisfied, from the facts in the case, that the constructive total loss, which it is admitted once existed, had ceased before the eighteenth day of July, when the offer to abandon was made.
It may be admitted as a general rule, that when a vessel is wrecked, so that she cannot carry her cargo to the port of delivery, but the cargo is safely delivered to the owner, who may ship it in a reasonable time on board other vessels to the port of delivery, he shall not abandon the cargo, but shall pay the original ship a pro rata freight. (8)
In the present case, the ship, by a sentence of the Admiralty having jurisdiction of the cause by reason of the capture, was discharged of the teas, which were holden to pay the master his full freight; and when the teas were decreed to be restored to Wilson, he was obliged to give security for the freight. The captain refused to receive the teas on board, and the voyage insured was lost, and *207 must be considered as continuing lost, until an opportunity offered to the owner of shipping them on board another ship for Bremen. If Wilson be considered as the owner’s agent, and a delivery of the teas to him as a delivery to the plaintiff, the case states no opportunity of shipping them to Bremen in another ship, until the twenty-eighth of July following, when it was put on board a Swedish ship. This was not done until ten days after the offer to abandon was made, and thirty-six days after Wilson had received the teas.
The loss, therefore, continued constructively total, when the offer to abandon was made; for the safety of the cargo will not change the total loss of the voyage existing, until there be an opportunity in a reasonable time to re-ship the cargo, and the owner is not obliged to wait for other ships.
This opinion is formed on the admission that the principles in this case are the same which apply to a ship wrecked, and also that Wilson was the plaintiff’s agent; both of which are questionable.
*In this case, the cargo was not only taken and de- [ * 232 J tained as prize, but taken out of the vessel, and compelled to pay the full freight, and the master was discharged of his obligation to perform the voyage when the ship was able; and we can find no case where, under these circumstances, the owner, receiving his cargo in a foreign port, is obliged to hire another ship to transmit his goods to the port of destination.
Neither does Wilson appear to be the plaintiff’s agent, authorized by his act to bind the plaintiff’s property. He had no previous authority from the plaintiff, who did not afterwards assent to his acts; and he must be considered merely as volunteering in the service, subject to the assent or dissent of the plaintiff upon notice.
Upon the whole view of the case, we are of opinion that the total loss arising from the capture continued so to be total at the time the offer to abandon was made, and that the plaintiff recover a total loss, (a)

 Marshall, 505, Manning vs. Newnham

 [It is now well settled in the United, States, that the right of abandonment depends on the facts existing at the time, and not on the information received by the assured. In England, the right of abandonment, it seems, depends on the state of things at the time of bringing the action upon the policy. Bradlie & Al. vs. The Maryland Ins. Co., 12 Peters, 378.—Marshall vs. Delaware Ins. Co., 4 Cranch, 202.— Alexander vs. Baltimore Ins. Co., 4 Cranch. 370. — Peele vs. Merch. Ins. Co., 3 Mason, 27. — Church vs. Bedient, 1 Caines's Cas. 21. — Hallet vs. Peyton, 1 Caines’s Cas. 28. — Schieffelyn vs. New York Ins. Co., 9 Johns. 26. — Adams vs. Delaware Ins. Co., 3 Bin. 287. — Marshall vs. Delaware Ins. Co., 2 Wash. 51. — Dickey vs. New York Ins. Co., 4 Cow. 222.— Wend. 658.— Church vs. Marine Ins. Co., 1 Mas. 241. — Humphrey vs Union Ins. Co , 3 Mason, 429. — Bambridge vs. Neilson, 10 East, 329. — Patterson vs Richie, 4 M. & S. 394. — McIver vs. Henderson, 4 M. & S. 584. — Naylor vs. Taylor, 9 Barn. & Cres. 718. — Ed.]