Case 19—PETITION ORDINARY—April 2.

# Louisville Underwriters v. Pence.

### APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

1. INSURANCE—FORFEITURE FOR FAILURE TO PAY PREMIUM.—Although a policy of insurance provides that it shall be void upon the failure of the insured to pay a premium note within a certain time after maturity, a breach of the condition does not *ipso facto* render the policy void, but merely voidable at the option of the insurer, who may elect to continue the policy in force, notwithstanding the default in payment.
2. MARINE INSURANCE—NEGLIGENCE OF MASTER.—Where a policy insures against the perils of the sea or river, the mere neglect of those in charge of the vessel will not free the insurer of liability. And this rule applies, although the policy insures against the "unavoidable dangers" of the rivers, as such a provision relates to the peril embraced by the policy, and not to the skill or care to be exercised by the master of the boat.

   Although a boat was stranded through the negligence of the master in making a landing, when the river, which was out of its banks, was falling rapidly, the loss resulting is covered by a policy insuring against "the unavoidable dangers of the rivers."·
3. GENERAL AVERAGE.—Where there is a common danger to the vessel and the cargo, everything which is saved by one continued, unremitted effort, must, by way of general average, pay the expense in proportion to its value. But this principle is not applicable when expenses are incurred for a separate interest, the other interests not being involved in the danger.

Louisville Underwriters v. Pence.

As the cargo in this case was in no danger, and was taken off merely to lighten the boat, the court properly disregarded the question of general average.

4. ABANDONMENT. — To constitute an abandonment under a policy of marine insurance, so as to give the insured the right to claim the full amount of the insurance upon the ground of a total constructive loss, there must be not only the intention to abandon, but a relinquishment by the owner of all right to the property. And although he may give notice to the insurer that he has abandoned the vessel, yet, if he continues to hold against the right of the insurer, and claim and use the property as his own, there is in fact no abandonment, and he can recover only what may in fact be his loss.

5. SAME.—Where the policy provides that there shall be no abandonment as for a total loss, unless the injury sustained be equivalent to fifty per centum of the agreed value of the policy, if in all probability the expenditures that must be incurred to deliver the vessel from her peril will be more than half her value, and her peril be such that a considerate owner, if uninsured, would not attempt to save her because of such great expense, then there may be an abandonment. And the fact that the vessel is subsequently saved will not defeat the claim.

6. AMENDED ANSWER.—The court properly rejected an amended answer, pleading that the policy sued on had been canceled prior to the accident, as the action had been pending nearly two years and the pleading was not offered until the close of the testimony, the decided weight of which tended to show that the policy was still in force.

LINCOLN, STEVENS & LINCOLN, MARSHAL & LOCHRE, BROWN, HUMPHREY & DAVIE, FOR APPELLANTS.

1. The insured having failed, for fifteen days after maturity and demand, to pay the premium note, the policy, by its terms, "became and remained void"; and was·not enforceable at the time of the loss. (Blackerby v. Continental Insurance Co., 83 Ky., 578; Bane v. Travelers' Insurance Co., 85 Ky., 677; Phœnix Co. v. Stevenson, 83 Ky., 11; Mutual Insurance Co. v. Amersman, 119 Ill., 329; Shrimp v. Cedar Rapids, 124 Ill., 354; Wall v. Home Ins. Co., 36 N. Y., 157.)

2, The policy only promised to pay in case of loss from "unavoidable dangers of the rivers"; which means such dangers as could not be avoided by ordinary care and skill on the part of those operating the boat. As the loss here occurred from those in charge of the boat recklessly undertaking to land it out on the top of the bank, in an overflow of water, which was rapidly falling (in order to get a few hogsheads of tobacco for freight), there being no necessity of landing there, and the peril being apparent, the loss was not from "unavoidable dangers of the river." (Hays v. Kennedy, 41 Pa. St., 378; Citizens Company v. Marsh, 41 Pa. St., 394; 1st Parsons on Marine Insurance, 532.)

3. As the boat and cargo were both in peril, because of the danger of the

boat breaking in two, and both thereby being lost, it became a case of "general average"; and the loss should have been distributed by the captain between the cargo and the boat, and should not all have been put upon the insurers of the boat. (Bevan v. Bank U. S., 4 Wharton, 309; Mitchell v. Patterson, 22 Fed. Rep., 52; Walthrew v. Maverani, Law Rep., 5 Ex., 124; Nelson v. Belmont, 21 N. Y., 50; Coast Co. v. Phœnix, 13 Fed. Rep., 127; 20 Blatchford, 568; McAndrews v. Thatcher, 3 Wallace, 368; Gillett v. Ellis, 11 Ill., 582; U. S. v. Wilson, 3 Sumner, 309.)

4. As the owners of the boat did not offer to deliver the boat to the insurance company, but continued in possession and use of it as owners, there was no abandonment of the boat; and, therefore, the loss is to be settled only as a partial loss and not as a total loss. (Chadsey v. Guion, 14 Jones & Spencer, 122; Columbia Ins. Co. v. Ashby, 4 Peters, 144; Parsons on Insurance, 190.)

5. The amount of recovery was excessive in any view, as the expense in saving and repairing the boat was only about $3,000, while the judgment is for $4,000. (Gordon v. Mass. Ins. Co., 2 Pickering, 249.)

B. F. BUCKNER, E. F. TRABUE, JOHN L. SCOTT FOR APPELLEE.

Brief not in record.

CHIEF JUSTICE HOLT DELIVERED THE OPINION OF THE COURT.

This is an action upon a marine policy of insurance.

The appellant, the Louisville Underwriters, issued it to the appellee, S. V. Pence, on November 26, 1885, insuring his steamboat, the Hibernia, valued at six thousand dollars, in the sum of four thousand dollars, for one year. The first premium note of one hundred and twenty dollars matured on February 26, 1886, and was unpaid, when on April 14, 1886, the boat was stranded upon the Kentucky river. It was returning to Louisville from a trip up the river with a cargo worth perhaps nine thousand dollars. Owing to a rise the river was out of its banks. The boat upon a third effort made a landing upon or beyond the top of the river bank to take on some freight, but stuck there. The river was falling rapidly, and in a few hours the greater portion of the boat was high and dry upon

the bank, while the other part was in the water.    The entire cargo was removed within a few hours after the boat grounded, but it thus remained for over fifty days, although much labor was being constantly expended in the effort to get it into the river.   It did not break in two, but its timbers were bent and strained, many of them, in fact, broken, and when at last released, it had, in its leaky condition, to be towed by other boats to a place for repairs.    All this, aside from the removal of the cargo, involved an expense of thirty-three hundred dollars.

There is evidence tending to show that within a few hours after the boat stranded, the owner, who was also at the time in charge of it as master, sent a man to the appellant's home office with the word, and perhaps a letter, to the effect that it was stranded and the appellant could take charge of it.

The evidence clearly shows, however, that notwithstanding this notice the appellee retained control of the boat, and after having it repaired, claimed, controlled and used it as his own, and so far as appears, has done so ever since; at least he was so doing when this action was tried below in March, 1888.

It was brought for a total constructive loss, and a verdict obtained for the full amount of the insurance.

The policy provides: " The perils which this company hereby assume under this policy are the unavoidable dangers of the rivers.    *    *    This policy shall become void   *   *   *   in case the note or other obligation given for the premium herefor be not paid within fifteen days after maturity and demand, and remain void during the time the same shall be overdue and unpaid.    *    *    This company shall be free from all claims for loss or damage

arising from or caused by  *  *  barratry.  *  *  There shall be no abandonment as for a total loss, on account of said vessel grounding, or being otherwise detained, or in consequence of any loss or damage, unless the injury sustained, inclusive of any general average claim, be equivalent to fifty per centum of the agreed value of this policy.  *  *  The insurance may be terminated at any time at the request of the insured, in which case the company may retain the customary short rates, and the deductions shall only be made on the whole months of unexpired time.  The insurance may also, at any time, be terminated at the option of the company, on giving five days' notice to that effect, and refunding a suitable proportion of the premiums for the unexpired term of this policy."

The company claims the policy was cancelled at the request of the assured prior to the accident.  This, however, was not pleaded.  At the close of the testimony the appellant proposed to do so by an amended answer then tendered.  It was properly rejected.  While there was some evidence to this effect, yet the decided weight of the testimony was otherwise.  The action had been pending nearly two years, and if true, it must have been known to the company when it filed its answer.

Its defenses are that the policy was not in force at the time of the accident, because the first premium note was then overdue more than fifteen days, and its payment had been demanded; that the accident was the result of the negligence of the master of the boat, and that it was a case for general average, requiring the cargo to contribute ratably to the expense or loss, whereby the underwriter would be relieved to a certain extent.

The non-payment of the premium note for fifteen days did not, *ipso facto*, render the policy void. It rested with the company whether it would so treat it. It was voidable at its option. It could elect to consider the policy in force notwithstanding the default in payment. If this were not so, then a party desiring to annul a contract would only need to make default to accomplish his purpose, although the other party and who would not be in fault, might elect to continue it.

In Stevenson v. Phœnix Insurance Company, 83 Ky., 7, where a policy provided, if the assured should thereafter take out other insurance upon the property insured, it should be void, it was held that a breach of the condition made it voidable only at the election of the insurer.

Whether the appellant had waived the payment of the premium note and the consequent forfeiture of the policy was submitted to the jury by proper instructions.

It is settled that where a policy insures against the perils of the sea or river, the mere neglect of those in charge of the vessel will not free the insurer of liability. The fact that the want of judgment or skill of the master in charge may have contributed to the loss will not preclude a recovery of the underwriter. This is settled law in both England and this country.

If the proximate cause of this loss be a peril insured against, then it is covered by the policy, although it may have been occasioned remotely by the negligence of the master. His misconduct, unless tainted by design or fraud, will not defeat a recovery.

It was held in Insurance Company v. Sherwood, 14 Howard, 351, if the loss be occasioned by a peril of the sea, the insurer is liable under a policy against the usual

perils of the sea, although the master of the vessel did not use due care to avoid the peril.

If the peril was the operative cause of the loss, the inquiry goes no further—the cause of the peril will not be sought. (Orient Insurance Company v. Adams, 123 U. S., 67.)

In the case now before us there is no evidence showing any fraudulent conduct upon the part of the master of the boat; and even if the landing was careless or ill-advised, yet it can not defeat a recovery.

It is said, however, the policy in this case only insures against such dangers as are "*unavoidable,*" and that this word is not to be found in the policies which were under consideration in the cases above cited. It does not refer, however, to the duties of those in charge of the boat, but to such perils as are incident to navigation, and from their nature inseparable from it. It relates to the perils embraced by the policy, and not to the skill and care to be exercised by the master of the boat. If this were not so there would have been no need of the policy providing that the insurer should not be liable in case of barratry. If the company was not to be liable in any case where the loss might be avoided by skill and care upon the part of the master, certainly a further provision against loss arising from fraud or evil design upon his part was unnecessary, and the policy is to be construed most strongly against the insurer. The use of this word in the policy did not, therefore, render the rule referred to inapplicable to this case, and the jury were in this respect also properly instructed.

This case is not one for general average.

It has been defined to be " a loss arising out of extraor-

dinary sacrifices made, or extraordinary expenses incurred, for the joint benefit of the ship and cargo." It is founded upon the planiest principles of common justice. So much so, that it was in force, at least in a crude form, at an early day among commercial nations. The ancient Rhodian law furnished an example which was adopted by the Romans. The rule is that where there is a common danger to the vessel and the cargo, everything which is saved by one continued, unremitted effort shall pay the expense in proportion to its value. For this purpose the ship is in lien to the cargo and the cargo to the ship. If the expense be incurred for the joint benefit in case of a common peril, and where there is imminent danger of all being lost, it is but natural justice and equitable that whatever is saved by the sacrifice shall contribute according to its value to the loss. "What is given for the general benefit of all, shall be made good by the contribution of all."

So far has this rule been carried in this country that a portion of a cargo, saved with but little trouble, but constituting by far the greater portion in value of the property in peril, has been compelled to contribute to the entire expense in proportion to its value. Thus in Bevan v. Bank of the United States, 4 Wharton, 301, there was a large amount of specie on board. It was first taken off, and owing to its nature with but little trouble; but it was required to contribute to the entire expense by way of general average. This case has, however, owing to its particular facts, been doubted by high authority. (McAndrews v. Thatcher, 3 Wall, 347.)

The principle, however, is fully recognized and well settled. It is not applicable, however, to this case,

because it is evident the expenses involved were not incurred for the common benefit of the boat and the cargo. Expenses incurred for a separate interest, the other interests not being involved in the danger, are chargeable to that interest. Here it is evident the cargo was taken off to lighten the boat, and not because the cargo was in danger.

No common danger existing, no common benefit to be secured, the lower court properly disregarded the question of general average. (Fireman's Insurance Company v. Fitzhugh, etc., 4 B. M., 161.)

This singular state of case is however presented. The appellee, Pence, incurred but about thirty-three hundred dollars of expense in saving and repairing the boat. He has, upon the ground of a total constructive loss, recovered a judgment for four thousand dollars, the full amount of the insurance, and has also kept the boat. If the verdict is to stand he is made more than whole, and yet the contract of insurance is one of indemnity merely.

It is true there may be an abandonment of the vessel, and a claim for the full amount of insurance upon the ground of a total constructive loss. The fact that it does not ultimately prove an absolute or total loss will not defeat the claim.

The right to abandon as for a total loss depends upon the probabilities, when the right is exercised, that it will prove such, and is not affected by the fact that the vessel is subsequently saved and the damage less than was expected.

It was held in the Orient Insurance Company v. Adams, above cited, that the abandonment of a vessel for a total loss, made in good faith, when it was in reason-

able probability impracticable to recover and repair it, and when the damage from the perils insured against amounted in like probability to more than fifty per cent. of the value, was a valid one within the terms of a policy providing that there should be no abandonment as for a total loss unless the injury sustained was equivalent to fifty per cent. of the agreed value of the vessel, although by a change of circumstances it afterward became practicable to float off the vessel, and the loss was thereby reduced to less than fifty per cent. of that value.

If, in all probability, the expenditures that must be incurred to deliver the vessel from peril will be more than half her value, and if her peril be such that a considerate owner, if uninsured, would not attempt to save her because of such great expense, then the abandonment would be valid.

Says Kent: "The right of abandonment does not depend upon the certainty, but on the high probability, of a total loss, either of the property or of the voyage, or both. The insured is to act, not upon certainties, but upon probabilities, and if the facts present a case of extreme hazard, and of probable expense, exceeding half the value of the ship, the insured may abandon, though it should happen that she was afterwards recovered at a less expense." (3 Kent Com., 321.)

An abandonment is, however, a surrender of the right of property. It is a giving up, a total desertion of claim. It includes not only the intention to abandon, but a relinquishment of all right to the property. There must be a concurrence of the intention and the actual relinquishment of all rights, so that the insurer may

appropriate the property. When abandoned it is as much his as if it had been the subject of a bill of sale.

It is true, it is said, it is effected by an unconditional notice to the underwriter, given within a reasonable time after the assured knows of the loss; but even if the latter gives such notice, and yet all the time continues to hold, claim, use and control the property as his own, and in denial of the rights of the insurer, it would not be a valid abandonment. In such a case there would, notwithstanding the notice, be no cession to the underwriter of the ownership. We do not mean, of course, that the owner must take the property and deliver it to the insurer. This would be impracticable. But, although the owner may give notice of an intention to abandon, yet if he all the time continues to hold against the right of the insurer and to claim and use the property as his own, then there is, in fact, no abandonment, and the owner can only recover upon the policy what may in fact be his loss.

It is said if the conduct of the appellee in continuing to use and claim the boat operated as a waiver of the abandonment, yet it is not pleaded.

Conceding that he gave the notice, as is claimed, of the intention to abandon, yet he, in fact, never did so. There never was any abandonment.

It can not reasonably be said that by the mere notice the rights of the parties became fixed when the appellant continued to use and claim the boat. This would sacrifice substance to form. If there had been a valid abandonment those rights would have become fixed, but the appellant's own testimony shows there was none. The appellee never held the boat at any time for the appellant.

It results that the case is one of partial and not total loss. The criterion of any recovery is the sum which the appellant necessarily paid out and expended for the relief and repair of his boat; and the only error of the lower court consisted in instructing the jury upon the hypothesis of an abandonment for a constructive total loss.

Wherefore, the judgment is reversed and cause remanded for another trial in conformity to this opinion.