CASE 86—PETITION ORDINARY—JUNE 24.

## Louisville Insurance Company v. Monarch et al.

APPEAL FROM DAVEISS CIRCUIT COURT.

1. EVIDENCE—STATEMENTS OF AGENT.—In an action on a policy of marine insurance, the testimony of one of the plaintiffs as to what the general agent of the company had said to him about certain information he had from another agent of the company who had been sent to the scene of the wreck with a view to recovering the cargo was competent.

2. EVIDENCE.—The written evidence of witnesses taken before the hull inspectors, upon an investigation of the facts attending the disaster is not evidence against the insured, they being no parties to the investigation.

3. Marine Insurance—Evidence.—The company can not defeat a recovery on a policy of marine insurance, because the number of the crew was not as large as that designated in the license, it appearing by the evidence that the boat had a sufficient number of officers and men to make the trip; and, especially, where there was no evidence even tending to show that the sinking of the boat resulted from an insufficient crew:

4. Evidence.—Where the company was trying to show that the boat was unseaworthy because of the defective condition of the hull, the evidence of the captain of the boat,' whose experience gave him a knowledge of such matters, that the boat might strike an obstruction and the contact not be felt or noticed by those on board, was competent.

5. Evidence.—It being charged in the answer that the boat was sunk because of the willful and fraudulent misconduct of the owners and officers of the boat, evidence of the value of the boat and that she was not insured was competent to show lack of motive to destroy it.

6. Evidence—Recalling a Party to the Suit to Testify.—It is within the discretion of the trial court to determine whether, after a party to the action has testified in chief and then introduced other testimony in chief, he may be recalled and give other testimony which he might have given in chief.

7. Practice—Amended Pleading.—Where the allegations of an amended pleading offered at the close of the evidence on the trial, do not disclose anything which the party offering it may not have known before by the exercise of reasonable diligence, and do not conform to the proof, the court properly refused to permit it to be filed.

8. Marine Insurance—Conduct of Owner and Officers of Boat.—The mere negligence of the owners of a boat or the officers in charge of it is no defense by an insurance company to a marine policy on the cargo. The only misconduct of the masters and officers which would defeat a recovery on the policy is fraud or design; although the policy insures against the unavoidable dangers of the river, that provision relates to the peril embraced by the policy and not to the skill or care to be exercised by those in charge of the boat.

9. When Insured May Abandon Submerged Cargo—Expense of Attempted Recovery.—It appearing that the insurance company had made preparations to recover the property, but was prevented by a rise in the river, which lasted two months, at which time it decided not to attempt the recovery and notified the insured that it denied liability on the policy, the cargo being of a

character to be destroyed by the action of the water upon it, the insured was justified in abandoning the submerged cargo; and was not liable for any part of the expense incurred by the company in its preparations to recover it.

10. PARTIAL LOSS—RIGHTS OF INSURER.—In an action on a marine insurance policy for a total loss, where the answer denies there was a total loss, and it appears from the evidence that part of the insured cargo was recovered by the owners, the company is entitled to a reduction of the amount of the insurance in proportion to the value of the property recovered, less the expense incurred by the owners in its recovery.

11. PRACTICE ON REVERSAL.—The jury having passed upon the liability of the company on the policy, and it having had its opportunity to contradict the evidence as to the property recovered and its value, and there being no conflict in the evidence on that point, and that being the only point upon which the judgment is reversed, this court will not order a new trial, but will direct the proper judgment to be entered.

BARNETT, MILLER & BARNETT FOR APPELLANT.

1. The court erred in permitting the plaintiff, Cate, to tell, upon his re-direct examination, what Captain Harpham had said to witness about the wreck after he had left it. Such evidence was collateral to the issues involved. (Greenleaf on Evidence, sec. 52; Bibb v. Prather, 1 Bibb, 316; Starkie on Evidence, vol. 2, star p. 222.)

2. It was error to permit the plaintiff, Monarch, to tell, when re-called, what Captain Harpham had said to Shallcross, as neither of them had authority to bind the defendant. (Greenleaf on Evidence, secs. 113 and 124; Meacham on Agency, secs. 6 and 288; Story on Agency, sec. 17; Smith's Mercantile Law, sec. 174; Kent's Commentaries, vol. 2, star pp. 620-1.)

3. The court erred in permitting the alleged copy of the certificate of inspection and license of the "George Strecker" to be read in evidence, it being and purporting to be nothing more than a copy. (Kentucky Statutes, sec. 1636.)

4. The court erred in refusing to permit the defendant to read in evidence copies of the testimony of Gilmour, Gross, Hatcher, Cate, Sauerhaber, Birk, Berganroth and Johnson on file in the office of the hull inspectors.

5. It was error to permit the absent witness Crammond to contradict the boat's official license and give his opinion that the boat had a sufficient number of officers and men in making the trip.

6. The court erred in permitting the witness, Crammond, who was

Louisville Insurance Co. v. Monarch et al.

not present at the accident and had not seen the boat loaded, to give his opinion that the boat might strike an obstruction and the contact not be perceivable to those on board.

7. It was error and misleading for the court to permit the witness, Crammond, the owner of the boat, to testify that the *boat* was not insured. There was no such issue, and the evidence was irrelevant. (Greenleaf on Evidence, sec. 52; Standard Oil Co. v. Tierney, 92 Ky., 378; Best on Evidence, sec. 644.)

8. The court erred again in permitting the witness, Crammond, the owner of the boat, to testify that the *boat* was worth $5,000 at the time it was lost.

9. The trial court again erred in permitting the plaintiff, James Cate, to be recalled and to testify for himself in chief, after having introduced other testimony for himself in chief. (Code, sec. 606, sub-sec. 4; Allison v. Moore, 3 Ky. Law Rep., 326; Beall v. Bethel's adm'r, 3 Ky. Law Rep., 693; McKee v. Maggard, 13 Ky. Law Rep., 304; Mt. Sterling & O. T. P. Co. v. Hamilton, 14 Ky. Law Rep., 720; Freeman's adm'r v. Deer Bros., 14 Ky. Law Rep., 813.)

10. It was error to permit the plaintiff, Cate, when recalled in chief, to testify as to what Harpham told him about reclaiming the property, and as to what plaintiffs had done in that behalf.

11. The trial court erred in overruling defendant's motion to exclude from the jury evidence as to the qualification, character or general reputation of the plaintiff's witnesses, Gross, Crammond and Berganroth, either as steamboatmen, mate, pilot, navigator, or officer, of any steamboat, said evidence being too general and not applicable to the "George Strecker."

12. The trial court also erred in overruling defendant's motion to instruct the jury to find for the defendant at the conclusion of the plaintiff's evidence.

13. The trial court erred in refusing to allow the amended answer tendered February 11, 1893, to be filed. (Civil Code, sec. 134; Rogers v. Rogers, 15 B. Mon., 377; Karney v. City of Covington, 1. Met., 339; Gibson's adm'r v. Smith  3 Ky. Law Rep., 332; Wade v. Moore, 3 Ky. Law Rep., 392; Miller v. Withers, 3 Ky. Law Rep., 57; Fannin v. Murray, 3 Ky. Law Rep., 251; Willis v. McNeal's adm'r, 8 Ky. Law Rep., 411; Howard v. Crisp, 9 Ky. Law Rep., 722; McFarland v. Benton, 10 Ky. Law Rep., 873; Northwestern Ins. Co. v. Davis, 12 Ky. Law Rep., 843; Caldwell v. Atwater, 15 Ky. Law Rep., 570; Greer v. City of Covington, 83 Ky., 416; National Mut. B. Ass. v. Jones, 84 Ky., 113; Fibin's adm'r v. C & O. R. Co., 91 Ky., 446; Carter v. West, 93 Ky., 213; Louisville Underwriters v. Pence, 93 Ky., 100.)

"That a court possesses the power to allow any amendments in

the pleadings while a case is depending, is not to be questioned; and this power is liberally exercised both in courts of equity and common law, for the furtherance of justice. Perhaps the legal discretion which exists in the case, acknowledges no other limit than is necessary for its purposes of justice, and for the restraint of gross and inexcusable negligence." (Chief Justice Marshall in Callaway v. Dobson, 1 Brock., 121.)

14. The court erred in not permitting the second amended answer tendered on February 13, 1893, to be filed.

15. The court erred in sustaining plaintiff's demurrer to the third paragraph of the rejoinder.

16. As the plaintiff recovered and kept a large part of the goods there was no legal or actual abandonment of the insured goods. (Louisville Underwriters v. Pence, 93 Ky., 99; Curtin v. Phoenix Ins. Co., 1 Wash., 400; Columbian Ins. Co. v. Ashby, 4 Peters, 139; Patapsco Ins. Co. v. Southgate, 15 Pet., 624; Comeggys v. Vasse, 1 Pet., 214; Marshall on Insurance, B. 1, a, 14; Park on Insurance, ch. 9, pp. 228-279.)

17. There was neither an actual nor a constructive total loss and the verdict for the full amount of the policy was both excessive and contrary to law. (Louisville Underwriters v. Pence, 93 Ky., 106; Hugg v. Augusta Ins. & Banking Co., 7 Howard, 595; Park on Marine Ins., c., b., subd., p. 247; 2 Phillips on Ins., c. 18, p. 483; 3 Kent's Com., 295-296; McGrath v. Church, 1 Caines, 196; Neilson v. Col. Ins. Co., 3, id., 108; LeRoy v. Gouverneur, 1 Johns, Cas., 226; Griswold v. New York Ins. Co., 1 Johns, 205; Livingston, J. S. C., 3 id., 321; Saltus v. Ocean Ins. Co., 14 id., 138; Whitney v. N. Y. Firemen Ins. Co., 18, id., 208; Brook v. Loua. St. Ins. Co., 4 Martin, N. S., 640; S. C., 5, id., 530; Moreau v. U. S. Ins. Co., 1 Wheat., 219 (ss. 891-2, *supra*); McGaw v. Ocean Ins. Co., 23 Pick., 405; 3 Summ., 544; 1 Story, 342; Cockring v. Fraser, 4 Doug., 295; 1 Park, 249; Taney's Decisions, 159; Byais v. Chesapeake I. Co., 7 Cranch, 415; Mariardier v. Chesapeake Ins. Co., 8 Cranch, 47; Neilson v. Columbian Ins. Co., 1 Caines, 108; Anderson v. Same, 3 Caines, 108; Myers Fed. Decisions, vol. 19, "Insurance;" Great Western Ins. Co. v. Fogarty, 19 Wall., 640.)

18. The plaintiff warranted that the boat was seaworthy when she left Rumsey. The court erred in defining "seaworthiness" as contained in instruction No. 4. She did not have a *sufficient crew* and was not *properly loaded*. (Richards on Insurance, secs. 99, 100, 101; Lord v. G. N. & P. Ins. Co., 4 Sawyer, 292; "The Vincensse," 3 Ware, 171; Parsons on Marine Insurance, p. 379; Rugley v. Sun M. Ins. Co., 7 Loua. Ann., 279; Miller v. S. C. Ins. Co., 2 McCor., 336 (13 Am. Dec., 734); Walsh v. Washington Irs Co., 2 Am. Dec.;

Louisville Insurance Co. v. Monarch et al.

Seaman v. Enterprise F. & M. Ins. Co., 21 Fed. Rep., 780; Prescott v. Union Ins. Co., 1 Wharton, 399 (30 Am. Dec., 207); 2 Phillips on Insurance, sec, 2079; Snethan v. Ins. Co., 3 Lou. Ann., 474; Talcott v. Ins. Co., 2 Johnson, 125; Work v. Leathers, 7 Otto, 379; Tidmarsh v. Washington F. & M. Ins. Co., 4 Mason, 439; Silva v. Low, 1 Johns Cas., 198; Low v. Hollingsworth, 7 T. R., 160; Dixon v. Sadley, 5 M. & W., 414; Patrick v. Hallett, 1 Johns., 248.)

19. The officers of the boat were guilty of the grossest misconduct, and were guilty of barratry, which was not one of the perils insured against. (Levi v. N. O. Ins. Ass., 2 Wood, 63; Citizens Ins. Co. v. Marsh., 41 Pa. St., 386; Flanders on Insurance, 2 ed., 553; Johnson v. Berkshire I. Co., 4 Allen, 388; Phoenix Ins. Co. v. Cochran, 51 Pa. St., 148; Chandler v. Worcester Ins. Co., 3 Cush., 328; Goodman v. Harvey, 4 Ad. & El., 870.)

20. The court erred in instructing the jury that it should find the full amount of the policy, and in refusing to direct the jury to give a credit for the sum expended by the defendant, and also for the value of the recovered property. (14 Am. & Eng. Enc. of Law; Mobile M. D. & I. Co. v. McMillian, 27 Aa., 27; Breed v. Providence & Wash. Ins. Co., 17 Blatch., 287.)

C. S. WALKER AND WALTER EVANS OF COUNSEL ON SAME SIDE.

FAIRLEIGH & STRAUS FOR APPELLEES.

1. The statement of the special agent of the insurance company who was sent by it to examine the wreck and take steps to rescue the property, as to the condition of the wreck after he had viewed it, was competent evidence against the company; and if not the evidence was not hurtful to the company and it can not complain.

2. The statements of the general agent of the company to one of the plaintiffs bearing on the issues as to whether notice of loss had been given and a waiver of notice by the company, and whether there had been an abandonment or waiver of abandonment, were certainly competent evidence against the company.

3. A copy of the certificate of inspection of the steamer carrying the cargo was certainly pertinent to the issue of seaworthiness raised by the company, and was properly admitted in evidence.

4. The refusal of the court to permit to be read in evidence on the trial the depositions taken before a board of inquiry was proper; the plaintiffs were not parties to that proceeding, knew nothing about it, and had no opportunity to cross-examine the witnesses.

5. As the trip was to be made wholly in the day time, and the boat was not to take on or discharge freight at any intermediate points,

the evidence of the captain of the boat that she was properly manned for the trip was competent, although the certificate of inspection required a larger number of men than she had.

6. The contention of the company was that the boat sank from its own unseaworthiness, and it was, therefore, proper to permit the captain of the boat, an expert and experienced steamboatman, to testify that the boat, loaded as she was, might strike an obstruction without so far shocking the boat as to call attention of those on board to the fact that an obstruction had been encountered.

7. The evidence of the value of the boat and that it was not insured was competent to show lack of motive in its owners or crew to fraudulently destroy it, as was charged in defendant's pleadings.

8. The court properly refused to permit the two amended answers to be filed; they were not offered till all the evidence was in, and no reason whatever was shown why the defendant might not, with ordinary diligence, have ascertained the alleged facts at any time; besides the allegations did not conform to the proof as given on the trial.

9. Whenever the thing insured is, by the operation of a peril insured against reduced to such a state as to be no longer capable of use under its original denomination, there is an actual total loss; and in case of such a loss, an abandonment is wholly unnecessary. (McArthur on Marine Insurance, p. 138.)

10. The right of abandonment as for a total loss depends on the probabilities at the time the right is exercised. The company's agent was at the scene of the wreck charged with the duty of undertaking the rescue of the property, and he acted upon the assumption that there had been a total loss and that the company was liable for the full amount of the policy. (Orient Ins. Co. v. Adams, 123 U. S., 67.)

11. An abandonment of the property was certainly waived before the suit was brought by the letter of the company, dated May 10, 1892, declining to pay the loss or any of it and declining to have anything further to do with the matter. The rule is that no delay in abandoning, which has not impaired the underwriters' rights, will destroy the right of abandonment. (Young v. Union Ins. Co., 24 Fed. Rep., 279.)

12. The evidence shows that the expense incurred by the plaintiffs in its recovery was as great as the value of the recovered property, and there was, therefore, total loss.

13. The implied warranty of seaworthiness does not apply to this case; the parties themselves having expressly contracted about the matter, all implications ceased. The insurer having undertaken

to expressly contract against loss in case of unseaworthiness under certain conditions, the proper construction of the contract is that it is liable under all circumstances of unseaworthiness, and that there is no implied warranty of seaworthiness, whatever. (Cropper v. Western Ins. Co., 32 Penn. St., 351; Nichol v. American Ins. Co., 3 Wood & M. (C. C.), 529; 4 Waite's Actions and Defenses, 20.)

14. The gross neglingence of those in charge of the boat would not enable the company to avoid liability on the policy—it must show fraud or an intention to destroy the boat. (Louisville Underwriters v. Pence, 93 Ky., 96.)

15. The company having abandoned its efforts to rescue the cargo or any part of it, and denied any liability whatever on the policy, the plaintiffs should not be made to bear any part of the expense, incurred in its preparations to make the rescue, even though those efforts were at first made in good faith.

ELI H. BROWN AND WILFRED CARRICO OF COUNSEL ON SAME SIDE.

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

Monarch & Cate owned certain woolen mill machinery, wool and other goods, and desired to transport it from Rumsey, Ky., on the Green river, to Owensboro, on the Ohio river. Their purpose was to ship it by water, and to do so it would have to be placed upon a boat, carried down Green river to its mouth; thence up the Ohio river to Owensboro.

On the 5th day of March, 1892, the Louisville Insurance Co. issued to them on the property a marine insurance policy to the amount of $5,000. The adventures and perils which the company agreed to bear and take upon itself were the "unavoidable dangers of the . . . rivers."

The property was valued at $15,000, and here it may be added that that amount is the conceded value of it. The steamboat George Strecker, under a contract which Monarch & Cate made with her owner, Capt. Crammond, was to carry the property from Rumsey to Owensboro. The policy covered the property during the voyage.

The property was received on board of the boat. On the morning of the 8th day of March, 1892, the boat started on the voyage, and at a point between ten and eleven miles below Rumsey she sank in the middle of the river, where the water was forty feet deep, entirely submerging her, except the chimneys and the top of the pilot house. After her peril was discovered by the crew she sank so rapidly that it was impossible to get her to the shore. There was a rise in the river soon after she sank, and she remained submerged for several months.

This action was brought by Monarch & Cate to recover of the company the amount of the policy because of the alleged total loss of the property.

The answer denies that there was a total loss of the property; that the sinking of the boat was a peril against which it insured; that there was an abandonment of the property or any part of it. The company alleged the loss was occasioned by the willful, fraudulent and gross misconduct, negligence and carelessness of the owners, officers, agents, servants and seamen in charge of the boat.

There are other matters pleaded in the answer which at this point are not necessary to mention. The trial resulted in a judgment for the plaintiffs for $5,000.

Many errors, the appellant claims, were committed on the trial of the case which entitles it to a reversal and a new trial. We will consider some of the questions thus raised, somewhat in the order in which counsel discuss them in their briefs.

Immediately or soon after the boat sank the company was notified of it. It sent its agent, Captain Harpham, to the wreck to see its condition, with the view of recovering the property under "sue and labor" clause of the policy,

which fixed the proportion of expense that should be borne respectively by the insured and company.

It is insisted that the court erred in permitting Cate to tell, upon his redirect examination, what Harpham had said to him about the wreck after he had left it. Harpham was sent by the company to act for it in an effort to recover the property. Cate's redirect examination related to what Harpham said as to the meaning of the policy, as to the expense of recovering the property, and the interest each party would have in such as was recovered.

While what Harpham said as to the meaning of the policy was immaterial, as both parties conceded their rights were to be determined by its provisions, yet the court told the jury substantially that, if plaintiffs were entitled to recovery at all, they were entitled to recover the full amount, $5,000; and also that the company was not entitled to be allowed the expense it incurred before it determined to deny its liability for the loss, and abandoned its purpose to recover the property.

In view of the conclusions of the court the evidence of Cate in his redirect examination could not have and did not prejudice the rights of the company.

It is complained that the court erred in permitting Monarch to tell, when recalled, what Captain Harpham had said to Shallcross. Shallcross was the agent of the company; he was in its office looking after its affairs; talked with Monarch about the settlement of the claim; directed the movements of Harpham in his preparation to recover the property; ordered Harpham to discontinue his preparation to recover the property; looked after the payment of the expense Harpham had incurred; he appeared in court aiding in this case; made an affidavit for a continuance, and verified pleadings therein.

There, is no proof in the record showing he was an agent with limited powers. Under these circumstances, it fully appeared that he was authorized to speak for the company in the adjustment of the claim in controversy. If he chose to tell Monarch in a conversation about the adjustment of the claim that he had certain information from another agent of the company, it was not error to permit Monarch to prove the entire conversation which they had. Besides if Shallcross was the agent of the company without limited powers, as he appears to have been, then this testimony was competent as tending to prove that Harpham was authorized by the company to adjust the loss with Cate.

There was an investigation made in the office of hull inspectors at Evansville, Ind., as to the facts attending the disaster; the testimony of certain witnesses was taken and reduced to writing. The defendant offered as evidence the so-called duplicates of this evidence. Monarch and Cate were no parties to that proceeding, and were not even present when it took place.

A mere statement of the facts shows that the court did not err in refusing to admit them as evidence.

Captain Crammond testified that the boat had a sufficient number of officers and men to make the trip. It was proper to admit this because it appears that the boat was to make the trip in daylight, and that, therefore, an additional crew was not needed. This testimony would tend to rebut any presumption that might be indulged that the boat was unseaworthy because the crew was not equal to the number required by the certificate of inspection and license. It could not be said that the company could defeat a recovery when there was a sufficient crew on the boat to properly handle her, although not the number designated in the

license, especially when there is no evidence even tending
to prove that the sinking of the boat resulted from an in-
sufficient crew.

It was likewise proper to allow Crammond to testify that
the boat might strike an obstruction, and the contact not
be perceivable to those on board. His own experience as
steamboatman enabled him to have a knowledge of such
matters. This testimony was relevant because the effort
was being made by the company to show or to create a
presumption that she was unseaworthy because of the
defective condition of the hull.

The answer charges that the boat was sunk because of
the willful and fraudulent misconduct of the owners and
officers, etc., of the boat. Crammond was allowed to testify
that the boat was not insured, and that she was worth
$5,000.

This evidence was properly admitted to show the owners
and officers could have no desire or motive to destroy the
boat. If this evidence was not relevant it was not mislead-
ing to the jury, and we can not, from any point of view, see
how it was prejudicial to the rights of the company. Testi-
mony may be entirely irrelevant, and yet not prejudicial to
the rights of the party objecting thereto.

It is insisted that the court erred in permitting the plaint-
iff, James Cate, to be recalled and to testify for himself in
chief after having introduced other testimony for himself
in chief.

Subsection 4, section 606, Civil Code, provides that "no
person shall testify for himself in chief in an ordinary action
after introducing other testimony for himself in chief."

This court in several cases has held that when a party
has introduced other testimony for himself in chief he

should not be permitted to testify for himself in chief. We adhere to that rule. The questions presented in those cases are not involved here. Cate had testified for himself in chief before he introduced other testimony for himself in chief.

After such testimony had been introduced he was recalled as a witness to prove facts which, if competent, could have been testified to by him in chief. After a party has testified for himself in chief the fact that he may have to introduce other testimony in chief does not bar his right to be recalled to testify to such facts as are pertinent to the issues. His right to do so is in the sound discretion of the court. It is within the control of the court, as it is as to the testimony of any other witness who may have testified, except if it was manifest the party had purposely withheld certain testimony while he was testifying for himself in chief with a view of being recalled after he had introduced other testimony in chief, to give additional testimony in chief, the court would not abuse its discretion in refusing to allow him to testify. In this case no facts appear which indicate that there was any abuse of the court's discretion.

It was charged in the answer that the captain and crew of the steamboat were incompetent, unskillful and unfit for the service in which they were engaged. It was sought to show the boat was unseaworthy by reason thereof.

The evidence as to their competency and fitness for the service in which they were engaged when the boat sank and their general reputations as to such competency and fitness was admissible.

It was directly on the issue raised by the answer. It showed they were skillful in the service in which they were engaged, and, besides that, their general reputations were

such, as steamboatmen, that the owner of the boat was justified in engaging them in their respective capacities for the voyage in question.

The allegations contained in the amended answers, which were offered at the close of the testimony, as stated therein to conform to the proof, may be summarized as follows: That more than one-half of the machinery and goods insured were rescued and afterwards sold to the Owensboro Woolen Mills Co., for a certain amount of the capital stock of that company; that the goods and machinery were not properly or carefully stored or loaded upon it; that the crew on the boat was not the number required by the United States laws, and that they were necessary for the proper and safe running and management of the boat; that the defendant did not learn these facts until during the trial. .

In the first place there is no reason why the defendants may not have known all the facts alleged, if true, by the exercise of ordinary diligence. In the second place, they do not conform to the proof.

The testimony of the parties connected with the loading of the boat was that it was properly and carefully loaded; that the carrying capacity of the boat was over one hundred and fifty tons, and the highest estimate as to the weight of the cargo was something over eighty tons. This testimony is not contradicted. Besides it is not alleged in the amendments offered that the disaster resulted from the fact that the boat was not carefullly and properly ladened.

In view of the fact that the proof in the record was insufficient to show that the boat was not carefully or properly ladened, etc., the court did not abuse its discretion in refusing to allow the amended answer to be filed on account of the allegations as to the ladening of the boat.

The proof showed, and was uncontradicted, that the crew in charge of the boat was sufficient for the voyage, as it was to be made in daylight; besides there was not the slightest evidence tending to show that the boat sank because of the insufficiency of the crew.

The court did not err in overruling the motion to file the amended answers.

It was held in the case of Leaman v. Enterprise Fire and Marine Ins. Co., 21 Federal Reporter, 781, that the omission of a starboard rudder at the port of departure or anywhere along the line can not be said to be a lack of seaworthiness when its absence did not materially affect the steerage power of the vessel or prevent the pilot from maintaining good control over its motions.

Why should a recovery be defeated because the vessel did not have a night crew in a daylight run? Their absence did not affect in any degree the control of the movements of the boat. There was no express warrant that there should be a given number of officers and seamen in charge of the boat. The implied warranty of the insured was that a sufficient number of officers and men should be in charge of the boat during the voyage, and that they should be reasonably skillful for the service.

There is an obligation resting in the law on the insured to see that the vessel is seaworthy. Whether provided in the contract or not, the insured warrants the vessel to be seaworthy when she leaves the port of departure.

The mere negligence of the owners of the vessel or the officers in charge of it is no defense to the policy. (Orient Ins. Co. v. Adams, 123 U. S., 67.)

It was said in Waters v. Merchants Louisville Ins. Co., 11 Peters, 213, "that in marine policies, whether containing

the risk of barratry or not, a loss when the proximate cause was a peril insured against is within the protection of the policy, notwithstanding it might have been occasioned remotely by the negligence of the master and mariners."

To the same effect is General Mut. Ins. Co. v. Sherwood, 14 Howard, 352; Phoenix Ins. Co. v. Erie Transportation Co., 117 U. S., 312.

The court held (123 U. S., 73), that the only misconduct of the master and officers which would defeat a recovery on the policy was fraud or design.

When the policy insures against the perils of the river, the mere neglect of those in charge of the vessel does not free the insurer of liability, although the policy insures against the unavoidable danger of the river, as such a provision relates to the peril embraced by the policy and not to the skill or care to be exercised by those in charge of the boat. (Pence case, 93 Ky., 96.)

In Levi v. The New Orleans Insurance Association, 2 Wood, 66, it appeared that the custom of the river was that the ascending boats should run under the points near the shore and the descending boats followed the main channel. The failure of the pilot to observe this rule resulted in the collision. The court held it was negligence, carelessness and unskillfullness, but it was not willful misconduct.

There was an entire failure of proof in this case to show such misconduct on the part of the officers in charge of the boat as indicated that she was sunk by their fraudulent or willful misconduct.

Under the instructions of the court before the jury was authorized to find for the plaintiff they had to believe from the evidence that at the time the George Strecker departed on the voyage she was in a reasonably good condition for

the voyage, and reasonably sufficient to withstand the ordinary perils of the voyage; that she was tight and staunch in hull; that she was provided with a competent master and sufficient number of competent officers and crew, and that they were competent and fit for the voyage. In view of the pleadings and the evidence we are of the opinion that the court's instructions were sufficient in submitting the question of seaworthiness of the boat to the jury.

The plaintiff sought to recover as for a total loss. While the company denies liability, it insists that there was only a partial loss, and if liable then only for the partial loss.

The vessel lay submerged for many months. After the disaster the insurance company determined to try to rescue the cargo. It procured a diver, a boat and necessary appliances for the purpose, and after getting them at the scene of the wreck the river had raised and continued in this condition for two months. About the time it was at such stage of water that the work of recovering the property could be undertaken it abandoned the project and notified the insured that it was not liable on the policy. The plaintiffs soon thereafter notified the company that they abandoned the property and for it to take charge. The cargo was of a character to be destroyed by the action of the water upon it. Its situation was such that there was no reasonable probability that it could be recovered after the company withdrew the men and means provided for the purpose. The situation, in our opinion, was such that justified the insured in abandoning the property then submerged. In determining the question of abandonment of property it is proper to take into consideration where the vessel lay, and all other attendant circumstances. (123 U. S., 75.)

The emergency of the peril and apparent extent of expenditures required to deliver the property from it will justify an abandonment (12 Peters, 398.)

The right of abandonment does not depend upon the certainty but on the high probability of total loss. The insured is not to act upon certainties but upon probabilities. If the facts present a case of extreme hazard and of probable expense, exceeding half the value of the property, the insured may abandon, though it should happen that it was afterwards recovered at less expense. (3 Kent. 321.)

We are of the opinion that the insured would have been justified in an abandonment of all the machinery, household goods and wool not then recovered at the time the company abandoned its purpose to recover the property and at the time it notified the company of its purpose of abandonment.

The difficulty which we see in holding it was a total or a constructive total loss is the fact that at the time of the disaster 1089½ pounds of wool, worth $200, was recovered which the insured received and appropriated to their own use, and also afterwards received some of the machinery, the value of which, owing to its damaged condition, was slightly the advance of old iron, but it was appropriated by the insured.

In view of these facts we are of the opinion that there was only a partial loss. As held in the Pence case, although the action was for a total loss, there could be a recovery for a partial one. The cargo is admitted to have been of the value of $15,000. The policy was for $5,000. Had there been a total loss then the company would have been liable for one-third of the value of the cargo, which is $5,000, the exact amount of the policy. For a partial loss the company is liable in same proportion, for the policy provides: "And in all other cases the said insurance company shall be

chargeable with its proportion of loss according as the sum herein insured bears to the whole sum at risk."

So the court erred in telling the jury if the company was found to be liable under the policy they should find the full amount of it. The petition alleged a total loss. The answers denied there was a total loss. The reply admitted there was recovered property of the value of $800 at an expense of something over $600. The rejoinder says that the property recovered was of a greater value than stated. There was an issue formed upon this question. But one witness testified as to the value of the property, and that was Cate, one of the insured. He testified that the value of the property in the damaged condition in which it was received was $800, and this includes the 1089½ pounds of wool. He testified that the necessary expense in recovering it was $631.09. An account of this expenditure was presented. The charges for fee bills paid Miles, Walker & Carico, amounting to $33.50, are not allowable for expenses of recovering the property. This would leave $597.59 as the amount of expenses incurred by the insured in recovering the property, and under the policy the acts of insurer or insured in recovering the property are to be "considered as done for the benefit of all concerned."

The effect of recovering any part of the property benefits the insurer inasmuch (in this case) as he is entitled to credit for one-third of its value, less the expense of recovering it.

The value of the property recovered being $800, less $597,-59, the expense of recovering it, which makes the amount of property to be credited on amount at risk $202.41, which makes the total loss $14,797.59, for one-third of which, $4,-932.53, the insurer is liable, instead of $5,000, as determined by the court below, being $67.47 less than the verdict and judgment.

The question of the liability of the company on the policy was fully tried, and the verdict of the jury and the judgment of the court was to the effect that it was liable. There was a total loss except the value of the property recovered.

There was an issue on this question upon which the company could have introduced evidence. It failed to do so. It had its day in court on the issue. The plaintiff alone introduced evidence as to the property recovered and its value. There is no conflict in the evidence on the issue. The jury could not under the proof have found the facts as to the property recovered or its value other than as we have fixed.

As the company has had the jury to pass upon the question of its liability on the policy, and had its opportunity to contradict the evidence as to the property recovered and its value, we do not think the case should be reversed, with directions to grant a new trial.

The company incurred something over $1,000 in preparing to recover the property—getting diver, boat and necessary appliances, etc. This was done soon after the disaster. The river did not get in a condition for the work for about two months thereafter. Then, without the consent of the insured, the purpose to recover the cargo was abandoned, and the boat and appliances, etc., which were to be used for the purpose were taken away.

The company did not abandon the effort to recover the property because it could not be recovered or because the expense of recovering it would exceed its value, but because it reached the conclusion that it was not liable under the policy.

The insured received no benefit whatever from the expense incurred by the company, nor did the company en-

counter any obstacle which rendered it impossible to prosecute its effort to recover the property.

The effort is to make the insured pay something over $600 because the company reached the conclusion that it was not liable on the policy. The policy does not authorize the company to incur expense which the insured is liable for in a preparation to recover the property, unless it was developed after such preparation that it could not be recovered or that the expense of recovering it would be so great that it would not be profitable to engage in the effort, or that some unforeseen casualty occurred which prevented it.

When the company abandoned the purpose to recover the property it risked its right to recover any part of the expenses of the insured on its liability to defeat a recovery on the policy.

Wherefore, the judgment is reversed, with directions that the court set aside the judgment for $5,000 and enter one against the defendant for $4,932,53.