## ORIENT INSURANCE COMPANY *v.* ADAMS.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
WESTERN DISTRICT OF PENNSYLVANIA.

Argued April 13, 1887. — Decided October 24, 1887.

In the absence of fraud or design, misconduct on the part of the master of a vessel covered by a policy of insurance will not defeat a recovery on the policy, when the proximate cause of the loss is a peril covered by it.

A provision in a policy of insurance of a steam vessel that the insurer shall not be liable for losses occasioned by "the derangement or breaking of the engine or machinery or any consequences resulting therefrom" relates to losses of which the derangement or breaking is the proximate cause, and not to such as are a remote consequence of either.

The abandonment of a vessel for total loss, made in good faith at a time when it was in reasonable probability impracticable to recover and repair it, and when the damage from the perils insured against amounted in like probability to more than fifty per cent of the value, is a valid abandonment within the terms of a policy which provides that there shall be "no abandonment as for a total loss," unless the injury sustained be equivalent to fifty per cent of the agreed value; although by a

change of circumstances it afterwards became practicable to float off the vessel, and thereby the loss was reduced below fifty per cent of that value.

THIS was an action to recover on a policy of marine insurance. Judgment for plaintiff. Defendant sued out this writ of error. The case is stated in the opinion of the court.

*Mr. James Lowndes* for plaintiff in error cited *Hollingsworth* v. *Brodrick*, 7 A. & E. 40; *Thompson* v. *Hopper*, 6 El. & Bl. 937; *Siordett* v. *Hall*, 4 Bing. 607; *Pipon* v. *Cope*, 1 Camp. 434; *Law* v. *Hollingsworth*, 7 T. R. 160; *Bell* v. *Carstairs*, 14 East, 374, 429; *American Ins. Co.* v. *Ogden*, 20 Wend. 287; *Chandler* v. *Worcester Ins. Co.*, 3 Cush. 328; *Williams* v. *New England Ins. Co.*, 3 Cliff. 244; *The Titania*, 19 Fed. Rep. 101; *Hazard* v. *N. E. Insurance Co.*, 1 Sumner, 218; *Hall* v. *Franklin Ins. Co.*, 9 Pick. 466; *Commonwealth Insurance Co.* v. *Chase*, 20 Pick. 142; *Reynolds* v. *Ocean Insurance Co.*, 22 Pick. 191 [*S. C.* 23 Am. Dec. 727]; *Sewall* v. *United States Insurance Co.*, 11 Pick. 90; *Peele* v. *Suffolk Insurance Co.*, 7 Pick. 254 [*S. C.* 19 Am. Dec. 286]; *Cort* v. *Delaware Insurance Co.*, 2 Wash. C. C. 375.

*Mr. D. T. Watson* for defendant in error. *Mr. Isaac Vanvoorhis* was with him on the brief.

MR. JUSTICE HARLAN delivered the opinion of the court.

This writ of error brings up for review a judgment against the Orient Mutual Insurance Company of New York upon a policy whereby that company insured the defendants in error in the sum of five thousand dollars, on the steamer Alice, of the agreed valuation of $27,000, against perils "of the seas, lakes, rivers, canals, fires, and jettisons that should come to the damage of said vessel or any part thereof."

The policy provided, among other things, that the company should be free from all claim for loss or damage "arising from or caused by . . . barratry, . . . or occasioned by the bursting of boilers, the collapsing of flues, explosion of gunpowder, the derangement or breaking the engine or machinery,

or any consequence resulting therefrom, unless the same be caused by unavoidable external violence;" that there should be "no abandonment as for a total loss on account of said vessel grounding or being otherwise detained, or in consequence of any loss or damage, unless the injury sustained be equivalent to fifty per centum of the agreed value in this policy; that the aforesaid vessel is, and shall be at all times during the continuance of this policy, tight and sound, sufficiently found in tackle and appurtenance thereto, competently provided with masters, officers, and crew, and in all things and means for the safe employment thereof;" and that "in no case whatever shall the assured have the right to abandon until it shall be ascertained that the recovery and repairs of said vessel are impracticable, nor sell the wreck, or any portion thereof, without the consent of the company."

The insured sued as for a total loss arising from one of the perils specified in the policy.

The company pleaded *non assumpsit* and payment, with leave to give in evidence the matters set forth in its affidavit of defence, which was adopted as a special plea. Those matters will sufficiently appear from the facts which will now be stated.

According to the bill of exceptions, there was evidence in behalf of the plaintiffs tending to show that, without wilfulness or design on the part of her captain, the vessel was carried, April 28, 1880 — before the expiration of the policy — over the falls of the Ohio River, at Louisville, Kentucky, and sunk, receiving damage in a sum equal to fifty per centum of her agreed value; and that on the 18th of May, 1880, it being apparently impracticable to float her off and repair her, the vessel was abandoned to the insurers as a total loss, and the sum due under the policy demanded.

The evidence introduced by the company tended to establish these facts: The master of the Alice was C. F. Adams, one of the assured, and a son of the other plaintiff. Before the sailing of the vessel he had the reputation of being a "drinking" man, and of that fact his father was informed. On her arrival at Louisville, on the morning of April 28, 1880,

the master gave the usual signal (which was transmitted to the engineer) that he had no present need of the engines. The joint of the mud valve was out of order, threatening damage to the freight, and making repairs necessary. The steam was thereupon blown off in order to make repairs. The captain, coming on board, saw that repairs were going on, and knew that the mud valve connected with the boiler needed repairs. The work of repairing made it necessary to blow off steam. The captain subsequently went on deck, and, without making inquiry of the engineer as to the condition of the steam or receiving any notice from him that steam was ready, tapped his bell at about 8.30 A.M. as a signal to let go the boat. At that time there was not sufficient steam to propel the vessel. It is the custom of the river for the master, before giving the order to let go, to inquire of the engineer as to the condition of the steam, and await his reply that the steam is ready before giving the order to let go. At the time of the accident the vessel was in a position to be carried over the falls, if she was let go without steam on. Upon being let go she was carried by the current down the river and over the falls, and, striking a pier, was badly damaged; in consequence of which she sunk soon thereafter below the bridge in about eighteen feet of water.

There was, also, evidence in behalf of the company, tending to show that the vessel was but slightly injured, and, in the spring of 1881, was floated and removed from the place at which she sunk, and put in the condition in which she was before sinking, for a sum little less than $6000; that when she was raised, the plaintiffs refused to pay the expense thereof; that after May 18, 1880, the plaintiffs sold her furniture and apparel without the company's consent, and that on or about the 28th of April, 1880, they put her into the possession of the Cincinnati Underwriters' Wrecking Company, which thereafter had the right of possession until the vessel was seized by the United States marshal under process, in December, 1880, upon maritime liens.

To further maintain the issues on its behalf the defendant — the bill of exceptions states — produced in evidence an ex-

emplification of the record of a certain cause, entitled " Cincinnati Underwriters' Company against The Steamer Alice," &c., in the United States District Court for the District of Kentucky, as tending to show that after the 18th May, 1880, the claimants, by the answers and petitions in that suit, claimed to be the owners of the vessel, her furniture, and apparel; that the Alice was subject to maritime liens, in a considerable sum, existing on the 18th of May, 1880 ; that she was sold under a decree to satisfy the same, the plaintiffs receiving a part of the proceeds of sale ; that the plaintiffs admitted that she was slightly damaged, and they had refused, after she was raised, to pay the expense of raising her.

Thereupon the plaintiffs offered evidence tending to show that " it was the custom of the river that the engineer should give notice to the captain before exhausting steam, and that it was not the custom for the captain to have notice from the engineer that steam was ready before giving the order to let go."

The plaintiffs, in further reply, offered to prove by the plaintiff, C. F. Adams, " that the steamer, at the time of loss, was insured in seven companies for a total insurance of eighteen thousand dollars, and, after the notice of abandonment, six of them, representing an insurance of $13,000.00, settled with the insured, and, as part of the settlement, released to the latter all interest in the steamer as she lay ; that, after the marshal's sale of the boat, the plaintiffs claimed to own the $\frac{18}{18}$ of the proceeds of sale, and that when the claim for the entire proceeds was made it was as to form, under the advice of counsel ; but the plaintiffs did not intend thereby to waive the abandonment theretofore made, or to keep, as against the Orient Insurance Company, the $\frac{5}{18}$ of the proceeds of sale." This was offered as bearing upon the question of waiver of abandonment of the Alice ; to which offer the defendant objected ; but the objection was overruled and the testimony of the witness admitted. The defendant excepted to the overruling of the objection and to the admission of the testimony.

The first assignment of error relates to the instructions upon the general question whether the insured, by anything done or

omitted to be done, had defeated their right to recover on the policy. The court, at the request of the plaintiffs, and against the objections of the company, instructed the jury that "where a loss under a policy of insurance, such as the one in suit, happens from the perils of the river, it is not a defence to the insurance company that the remote cause of loss was the negligence of the insured or his agents;" and that "the mere fault or negligence of the captain of the vessel by which the Alice was drifted into the current and drawn over the falls, will not constitute a defence for the company, unless the jury should be satisfied that the captain acted fraudulently or wilfully, with design in so doing." The theory of the defence was disclosed by the request to instruct the jury that if they "are satisfied from the evidence that the accident and loss was caused by the misconduct of Captain Charles F. Adams, that then the plaintiff cannot recover." This request was denied, but the court said to the jury : "This is true if the jury is satisfied that the conduct of the captain is properly characterized. If he designedly or recklessly exposed the vessel to the dangers of navigation at the falls, knowing that she was not in a condition to encounter them, he was guilty of misconduct such as would relieve the defendant from liability; but if the proximate cause of the loss was the stranding of the vessel, this was covered by the policy, and the defendant is not relieved from liability by showing that the loss was remotely ascribable to the negligence of the captain or the other officers or employes."

We do not perceive anything in these instructions of which the insurance company can rightfully complain. The court proceeded upon the ground that, if the efficient and, therefore, proximate cause of the loss was a peril of the river, the company could not escape liability by showing that the loss was remotely caused by mere negligence in not ascertaining, before giving the signal to let the vessel go, that she had steam enough for her proper management. The court committed no error in so ruling. In *Columbia Ins. Co.* v. *Lawrence*, 10 Pet. 507, 518, which was a case of insurance against fire on land, the court said that "a loss by fire, occasioned by the mere fault

or negligence of the assured, or his servants or agents, and without fraud or design, is a loss within the policy, upon the general ground that the fire is the proximate cause of the loss, and also upon the ground that the express exceptions in policies against fire leave this within the scope of the general terms of such policies." In the subsequent case of *Waters* v. *Merchants' Louisville Ins. Co.*, 11 Pet. 213, 224, it was said in reference to the case of *Columbia Ins. Co.* v. *Lawrence*, that "the court then thought that in marine policies, whether containing the risk of barratry or not, a loss whose proximate cause was a peril insured against, is within the protection of the policy; notwithstanding it might have been occasioned remotely by the negligence of the master and mariners." To the same effect are *Patapsco Ins. Co.* v. *Coulter*, 3 Pet. 222, 237; *General Mut. Ins. Co.* v. *Sherwood*, 14 How. 352; and *Phœnix Ins. Co.* v. *Erie Transportation Co.*, 117 U. S. 312, 325.

But it is insisted that the court should have granted the request of the company to the effect that it was not liable if the accident and loss were caused by the "misconduct" of the master. Had that request been granted, in the form asked, the jury might have supposed that the company was relieved from liability if the master was chargeable with what is sometimes described as gross negligence as distinguished from simple negligence. Hence the court properly said, in effect, that the misconduct of the master, unless affected by fraud or design, would not defeat a recovery on the policy. The principle upon which the court below acted was that expressed by Chief Justice Gibson in *American Ins. Co.* v. *Insly*, 7 Penn. St. 223, 230, when he said that "public policy requires no more than that a man be not suffered to insure against his own knavery, which is not to be protected or encouraged by any means; for though the maxim *respondeat superior* is applicable to the responsibility of a master for the acts of his servants, yet the insured, so long as he acts with fidelity, is answerable neither for his servants nor for himself." *Williams* v. *Suffolk Ins. Co.*, 3 Sumner, 270, 276.

The next assignment of error is that the court erred in ruling that the loss was not within the express exceptions of the

policy. The specification, under this assignment, is that the loss was the consequence of the derangement of the mud valve, and, therefore, within the exception that the company should be free of all claim for loss or damage occasioned by "the derangement or breaking of the engine or machinery, or any consequence resulting therefrom." The "consequence" here referred to is an immediate or proximate, not a remote consequence. Even if the mud valve is a part of the machinery of the vessel, within the meaning of the policy, its derangement cannot be said to have been the proximate cause of the loss. So far as the bills of exception show, the repairs of the mud valve had been completed before the order was given to let the vessel go.

It is also contended that the court erred in its instructions as to the abandonment of the vessel by the plaintiffs. The court told the jury, in substance, that the assured were entitled to abandon the vessel, if, on May 18, 1880, it was impracticable to recover and repair it, and if the damage from the perils of the river amounted to fifty per cent of the agreed value; that the right to abandon was to be determined from the facts as they existed on that day; that if the right then existed, and the plaintiffs availed themselves of it, the subsequent floating off of the vessel in the winter or spring of 1881 would not change the result; and that, in determining whether the injuries to the vessel from the perils of the river were to the extent of fifty per cent of her agreed value, the jury should take into consideration the "place where the Alice lay, and the uncertainty as to when (if at all) a rise would come to float her off, and all other circumstances in the case."

The argument in behalf of the company is that these instructions disregarded the express terms of the contract between the parties; that while the rule laid down by the court made the probability of the stipulated loss, at the time of abandonment, the test of the right to abandon, the policy made the actual existence of the stipulated proportion of loss the ground of the exercise of that right. We do not think the court mistook the meaning of the contract or erroneously instructed the jury. The jury were distinctly told that the right to

abandon depended upon the fact that it was impracticable to recover and repair the vessel.   But how were the jury to determine the existence of that fact ?   The contract provided as a condition precedent to the right to abandon that it be " ascertained that the recovery and repairs of said vessel are impracticable."   But in what mode ascertained ?   How was the insured to determine whether the recovery and repair of the vessel were impracticable at the time of abandonment ?   Why, manifestly, as the jury were told, by taking into consideration where the vessel lay, the uncertainty as to when (if at all) a rise would come to float her off, and all the other attendant circumstances.   While the damage must at the time have been equivalent to fifty per cent of the agreed value, and while the fact that the repairs subsequently made amounted to only $6000 tended to show that the actual damage was not so great as claimed, that fact is not decisive of 'he right to abandon.   For, as said in *Bradlie* v. *Maryland Ins. Co.*, 12 Pet. 378, 397, " If the abandonment when made is good, the rights of the parties are definitively fixed; and do not become changed by any subsequent events.   If, on the other hand, the abandonment when made is not good, subsequent circumstances will not affect it, so as, retroactively, to impart to it a validity which it had not at its origin."   *Rhinelander* v. *Ins. Co.*, 4 Cranch, 29 ; *Marshall* v. *Delaware Ins. Co.*, 4 Cranch, 202.

Again: " In many cases of stranding, the state of the vessel at the time may be such, from the imminency of the peril, and the apparent extent of expenditures required to deliver her from it, as to justify an abandonment; although, by some fortunate occurrence, she may be delivered from her peril, without an actual expenditure of one-half of her value after she is in safety.   Under such circumstances, if, in all human probability, the expenditures which must be incurred to deliver her from her peril, are, at the time, so far as any reasonable calculations can be made, in the highest degree of probability, beyond half value; and if her distress and peril be such as would induce a considerate owner, uninsured, and upon the spot, to withhold any attempt to get the vessel off, because of

such apparently great expenditures, the abandonment would doubtless be good." 12 Pet. 398.

In the same case the court quote with approval the following language of Kent:

" The right of abandonment does not depend upon the certainty, but on the high probability of a total loss, either of the property or of the voyage, or both. The insured is to act, not upon certainties, but upon probabilities, and if the facts present a case of extreme hazard and of probable expense, exceeding half the value of the ship, the insured may abandon; though it should happen that she was afterwards recovered at a less expense." 3 Kent Com. 321.

In this connection it is assigned for error that the court erred in ruling that the fact of the actual repair of the vessel for less than fifty per centum of her agreed value was not evidence relevant to the issue as to the amount of damage done to the Alice. This statement as to the ruling of the court is scarcely accurate. The court refused, and properly, to tell the jury that the fact that the vessel was recovered and repaired was " the best evidence " that it was practicable to recover and repair it. That fact, however, went to the jury as evidence, and they were at liberty, under the instructions, to give it due weight in connection with all the other circumstances, in determining whether the recovery and repair of the vessel were, within the principles announced in other instructions, impracticable at the time of the abandonment.

Upon the whole case we are of opinion that no error of law was committed to the prejudice of the company, and the judgment is

*Affirmed.*