CHARLES J. SEARLES v. WESTERN ASSURANCE COMPANY.

[40 South. Rep., 866.]

1 MARINE INSURANCE. *Constructive total loss. Abandonment of vessel.*
   Where a policy of marine insurance, insuring a barge, stipulated
   that there should be no abandonment as for a "constructive total
   loss," unless the costs of the necessary repairs by reason of the
   disaster, exclusive of the costs of rescuing the barge and taking
   it to the dock, etc., should be equal to seventy-five per centum of
   its agreed valuation, and the barge having been damaged by a
   storm, one of the dangers insured against:

   (a) The words "constructive total loss" mean such a loss as that
   the repairs made necessary thereby, exclusive of rescuing the
   vessel and carrying her to the dock, etc., will at least be equal to
   seventy-five per centum of her value; and

   (b) The assured could not, where to repair the damage would cost
   less than twenty-five per centum of the value of the vessel, aban-
   don her and recover for a "constructive total loss;" and

   (c) The insured could not justify an abandonment of the vessel as
   for a "constructive total loss" by proof that there were no facili-
   ties where she sank for raising her, and by making the expenses
   of bringing her to a dock an element of damage, showing that as
   to him she was worthless, so as to entitle him to abandon her
   and sue for a "constructive total loss;" and

   (d) While the insured is not compelled to make an effort to save
   the vessel before he can abandon her and sue, still; if he do so,
   he must prove that the conditions warranted him in so doing.

2. APPEAL. *Harmless error. Erroneous opinion of trial court.*
   Where, in an action on a marine policy, the testimony showed that,
   if assured had any right to recover for a total loss, it could only
   be for a constructive total loss, and where in his declaration he
   declared for a constructive total loss, and all the testimony was
   addressed to that kind of a loss, the error, if any, in the rulings
   of the trial court that a constructive total loss had to be proven,
   and that proof of a total loss would not prove a constructive total
   loss, was harmless if the plaintiff were not entitled to recover on
   any phase of the case.

---

---

3. INSURANCE. *Marine insurance. Stipulations. Construction.*

A provision in a marine insurance policy, giving the insurer the right to recover and repair the vessel insured, if it should believe that its interests demanded such procedure at any time, does not defeat the right of the insurer to resist any claim for damage made by the insured.

4. SAME. *Acceptance of premium after loss.*

An insurer, accepting the balance of the premium due on a marine policy after a disaster to the vessel insured, does not thereby forfeit its defense that no such loss has occurred as that sued for by the insured.

FROM the circuit court of Warren county.

HON. OLIVER W. CATCHINGS, Judge.

Searles, the appellant, was plaintiff in the court below; the assurance company, the appellee, was defendant there. From a judgment in defendant's favor the plaintiff appealed to the supreme court. The facts are stated in the opinion.

*McLaurin, Armistead & Brien,* for appellant.

In no view of this record can it be said under the authorities that a peremptory instruction should have been given for the defendant. The declaration in this case alleged that this vessel was sunk by reason of violent winds causing her to toss in the waves whereby her seams opened and she filled with water and sank to the bottom. This was within the terms of the policy sued on, known and designated as "unavoidable danger." 19 Am. & Eng. Ency. Law, 1023.

The court below followed the cases of *Sollberg* v. *Western, etc., Co.,* the same appellee as here, found in 119 Fed. Rep., 23, *et seq.*

The decision in that case is most arbitrary and unreasonable, and entirely too technical for the common affairs of life in dealing with insurance companies. This decision is squarely in the face of our own decisions in this state, and yet the court followed the federal decision. The court will notice on page 24 of 119

Fed. Rep., *supra,* in the syllabus, the court lays down the rule: "The fact that the insurer of a vessel demanded and accepted payment of a premium note after receiving notice of loss and of abandonment, does not relieve the insurer from the necessity of proving the loss to entitle him to recover on the policy."

It is sufficient to say, without any extended discussion of this case, that under the authority of the *Dobbins case,* 81 Miss., 623 (s.c., 33 South. Rep., 504) ; *Cocke* v. *Rucks,* 34 Miss., 105 ; *Jagers* v. *Griffin,* 43 Miss., 134; 24 Am. & Eng. Ency. Law, 624, 646, 647, that the rule is announced in the case in 119 Fed. Rep., is not the law of Mississippi, in reference to insurance. The court will notice in Vance on Insurance, in reference to marine policies, that the same law in the construction of marine insurance controls as in the construction of other insurance contracts, so there is nothing in the policy itself to take us away from the beaten path in reference to the construction to be given to this policy.    The court will also notice in clause 9 of the policy sued on there is the very identical provision in reference to the cancellation of the policy that is passed on in the *Dobbins case, supra,* wherein the court held that a failure to return the premium and notify the insurer that the contract of insurance was at an end by reason of the forfeiture claimed, would estop the insurance company from proving any cause of forfeiture.

Another answer to the view taken by the lower court in granting the peremptory instruction for the defendant, on the failure, as the court put it, to prove a constructive total loss, was that, following the literal language of the policy, the court was of the opinion that a constructive total loss had to be proven and that the proof of a total loss would not prove a constructive total or a partial total loss.    In this the court was in error.    It has been held repeatedly in the courts of the country, that the proof of a total loss necessarily included a constructive total.

On page 816, 23 Am. St. Rep., in the case of *Mayo* v. *Indian*

*Insurance Co.,* ALLEN, J., speaking for the court, says: "The natural construction is that it leaves the insurer liable for all total losses, but it makes no distinction between absolute and constructive total losses; and in case of a constructive total loss, which gives the assured a right to abandon, and he exercises the right, it becomes a legal total loss, as if absolute in its nature."

To the same effect will be found in the case of *Hebner* v. *Eagle Ins. Co.,* 69 Am. Dec., 310, where the court says as follows: "There seems to be no reason in the nature of the contract or of the business to which it refers, why the liability of insurers should not extend as well to a constructive as to an actual total loss."

And again the court says, on page 311: "The whole purpose of the enterprise—that of employing the vessel in profitable navigation during the year—was defeated. The court are therefore of opinion that under this policy the defendants were liable for a constructive total loss by the perils insured against, if followed by a legal abandonment."

These cases are marine insurance cases. To the same effect will be found the very strong opinion in the case of *Orient Ins. Co.* v. *Adams,* 123 U. S., 74, 75.

The effect of the abandonment was to pass the title of the vessel, or barge, to the insurance company, and to entitle Searles to his money under the insurance contract. *Insurance Co.* v. *Johnson,* 70 Fed. Rep., 794; 1 Am. & Eng. Ency. Law, 4, *et seq.*

It is unreasonable, we submit, to hold that when a barge sinks in the Mississippi river at Vicksburg, and cannot be raised, and the nearest port having a dock is New Orleans, four hundred miles away by river, that you can recover no insurance because you cannot prove the extent of the damage to your vessel under the water, and therefore cannot establish a constructive total loss because you cannot prove in dollars and cents that the repairs necessary to put your vessel again in order would amount to seventy-five per centum of the agreed value.

*Smith, Hirsh & Landau,* for appellee.

The practical effect of plaintiff's testimony was this: He considered the barge worthless to him, notwithstanding she was tied to the bank and one-half of it being out of the water, and he had made no thorough examination of her then condition.

If it be true that the owner of a barge or steamboat can ignore or avoid the obligations of his contracts by simply stating that an accident occurred, and without an examination of the extent of the injury, and without any knowledge of the amount required to repair the injury, can abandon the boat to the insurance company by simply declaring that she is a constructive total loss to him, then it will be not only idle ceremony to write insurance policies, but, unfortunately for maritime interests, there will, in our opinion, soon be no insurance policies issued, to the great detriment if not to the extinguishment of commerce upon rivers and lakes, for no insurance company will, with due regard to the right of its policy holders, issue policies if its obligations and restraints can be thus defied.

The burden rests upon the appellant to show, not that he considered the boat worthless, or that it was a loss to him, but that there was a loss under the terms of the policy, and his policy, as we have shown, expressly stipulates he cannot abandon his barge and declare that he has sustained a constructive total loss unless the cost of necessary repairs required solely by the disaster amounted to $2,250.00.

This would be a rule of common sense, but is also supported by undoubted authorities:

*Solberg* v. *Western, etc., Co.,* 119 Fed. Rep., 23, which was decided by the circuit court of appeals for the ninth circuit on October 6, 1902, decides questions directly in point, and certainly · the opinions of federal courts of appeal composed of jurists of eminence and standing construing the maritime law—a subject peculiarly within their jursidiction—are entitled to great weight.

Appellant quotes from Vance on Insurance, and we assume the privilege of doing the same. Mr. Vance says (p. 557):

"An actual total loss exists where the subject-matter of the insurance is wholly destroyed or lost, or when it is damaged so as to no longer exist in its original character."

And then, after citing instances, further says (pp. 557, 558): "But if she still remains a ship capable of being repaired and of again sailing upon the seas, the loss is not actually total, even though the cost of repairing her would be greater than her value when repaired.    In the latter case the loss would be constructive total, as we shall presently see."

We quote from 1 Am. & Eng. Ency. Law (2d ed.), title, "Abandonment:" "Actual total loss entitles the assured to recover the total amount of his subscription without abandonment; constructive total loss entitles him to recover such total amount only upon condition of making abandonment.    Actual total loss is when the subject insured is wholly destroyed or where there is a privation of it, and its recovery is hopeless."

The notes give illustrations of what constitutes total loss:

"A ship foundered and burned at sea or wrecked and broken upon the land so as to be past relief or repair."    *Murray* v. *Hatch,* 6 Mass., 475.

When a vessel upon the high seas has become a wreck incapable of being brought into port.    *Walker* v. *Protection Ins. Co.,* 29 Me., 317.

Argued orally by *A. A. Armistead,* for the appellant, and by *Joseph Hirsh,* for the appellee.

MAYES, J., delivered the opinion of the court.

On the 24th day of February, 1903, Searles insured a certain barge owned by him and used in transporting freight and merchandise on the Mississippi river.    The insurance began at noon on the 24th day of February, 1903, and ended at noon on the 24th day of February, 1904, and was taken out in the Western Assurance Company, appellee.    The amount insured for was not to exceed $2,000.    The policy of insurance is made an exhibit

to the bill; but, as the suit is predicated of only one clause of the insurance policy, we do not deem it necessary to set out any clause but this.    The clause referred to is clause 8, which is as follows, viz.:

"There shall be no abandonment as for a constructive total loss in consequence of any loss or damage, unless the cost of the necessary repairs required solely by the disaster, exclusive of cost of raising or rescuing the vessel and taking her to the dock and any general average charges, be equivalent to seventy-five per cent of the agreed value of the vessel as specified herein; nor shall there be any right to abandon on account of said vessel grounding or being otherwise detained."

This same clause also provides that, where the right to abandon exists, it shall not be held to be valid, or allowed as effectual, unless it be in writing, and signed by the assured, and delivered to the company or its authorized agent.    In October, 1903, Searles filed a declaration in the circuit court of Warren county to recover the full amount of the insurance granted by the policy; that is to say, $2,000.    The declaration alleges that on the 29th day of July, 1903, the barge was totally destroyed by the unavoidable dangers of the Mississippi river, and that by reason of violent winds, etc., though every effort was made to save the vessel, she became thereby a constructive total loss within the terms of the policy under which it was insured.    The declaration also alleges that the plaintiff performed all the conditions of the policy, and demanded payment of the company for the loss; but the insurance company declined and refused to pay, wherefore the plaintiff sues for the sum of $2,000 for the total constructive loss of the vessel.    The declaration contains but one count, and is for the total constructive loss of the barge.    There are quite a number of pleas filed by the defendant, but the single question presented to this court is, has the plaintiff made out such a case

as entitles him to recover the full amount of the policy as for a total constructive loss of the vessel?

The testimony of Mr. Searles is that he placed the insurance with the Western Assurance Company on the 24th day of February, 1903, expiring on the 24th day of February, 1904, at noon; that the barge was sunk on the 29th day of July, 1903, by a violent windstorm; that the premium paid for the insurance was $180, $90 of which was paid soon after the policy was taken out, and the balance about one month after the accident to the barge. When the boat was sunk he was sick in bed, but came down the next day to see what could be done about it, and, finding that nothing could be done, notified R. C. Wilkerson, the agent of the company at Vicksburg, that he had abandoned the vessel. The notice was a written notice. A day or so after the vessel was sunk he went up and looked at the vessel, and about one-half of it was in the river, and the other end sticking up on the bank, with considerable water in the lower end; the water being up to the lower deck, or cargo box. He had no facilities for raising the vessel, and could not get any, though he tried to do so, and there were no facilities available at Vicksburg, and he therefore abandoned the vessel, and notified R. C. Wilkerson, the agent of the assurance company, in writing. This notification was to Mr. Wilkerson at Vicksburg on the 31st day of July, and on the 2d day of August following the assurance company by telegram declined to accept the abandonment and notified him to raise the vessel. On the 3d day of August he telegraphed the assurance company that there were no facilities in Vicksburg for raising the vessel, and that the company ought to take charge of it. He afterwards wrote the company, again insisting that they take charge of the vessel; but they declined to do so, insisting that it was Searles' duty to raise the vessel, and that they did not intend to take any further action in the matter. The agreed value of the boat was $3,000, and the full amount of insurance was for an amount not to exceed $2,000. In the then condition of the vessel he deemed it of no value to him, and after the notification

of abandonment to Mr. Wilkerson, paid no more attention to it. He spoke to six or a dozen men to go and raise it, but could not get them to do it, but did not have any one go and look at the barge to see what could be done, as all the men whom he spoke to knew all about the condition of the barge and the river. Dennis Scott said that he had been the night watchman on the boat, and, though it had been leaking a little before the storm came, the storm was what caused it to sink; that the water dashing against the boat during the storm washed out the chinking and caused the boat to sink; that the storm lasted about twenty-four hours, and the boat was sunk about eleven o'clock on the morning after the evening when the storm began.

On these facts the plaintiff rested his case, and the defense introduced T. C. Sweeney, steamboat inspector for the board of underwriters in New Orleans. Mr. Sweeney stated that it was his duty to make examination of all vessels and crafts insured by the board of underwriters, and to make a report of their condition and value, and that he has been engaged in this occupation for the past eight years. That he was formerly engaged in superintending the building of vessels. Had inspected the boat in question some time in February, 1903, and recommended her acceptance as an insurance risk after certain repairs were made on the vessel, so that she would be put in a riverworthy condition. Three days before the vessel sunk he saw her in the river, and at the time he saw her there was a man pumping water out of her; that a few days afterward he received notice that the vessel had sunk, and came up to Vicksburg, reaching there on the morning of the 31st day of July, 1903. The boat was lying with the head on the bank and the stern in the river, with about fourteen feet of water in rear end. More than two-thirds of the frame part of the boat was out of the water. The water was not very high, but he does not recollect what the stage of it was. Mr. Searles was at home sick, but he talked to his clerk and asked for a protest, which was forwarded in a day or so. He returned to New Orleans, and there received the protest. He examined the

boat, and she could have been raised. It would have required a pump, siphon, and steamboat. Captain Miller agreed to go up and make the effort to raise the boat for $100, and it could have been easily raised; that the *Edna,* owned by Captain Miller, could easily have raised the boat, and when raised it would only have been necessary to calk the seams to the water line, if she did not leak below the water line, and if she did, then to dock her and put it in good condition. It would only have cost about $300 to repair her, and if it only cost $100 to raise her, then the total expense would not have exceeded $400. He stated of his personal knowledge he knew of no apparatus for raising vessels at Vicksburg, and that, if it had been necessary to dock the vessel, she would have to be sent to New Orleans as the nearest place; that $400 would have put her in the same condition as she was in at first. Donnovan stated that he saw the barge two days after it was sunk; she lay with head on bank and stern in the water; that he was willing to undertake to raise the boat for $75 a day, or to do the job for $150 or $175. He stated that he did not know what the repairs would cost after the boat was raised, as he was not a ship carpenter. Miller stated that he was a steamboatman, and had been engaged in the business for thirty years; that he went up to see Captain Searles about pumping out the boat, but Captain Searles said it was in the hands of the assurance company. J. W. Johnson stated that he went up to examine the boat at the request of Captain Searles for the purpose of repairing, and made the examination, and all the boat needed was calking and a few plank to set her afloat again. This would have cost $500 or $600. The examination was made in the latter part of November or first of December, 1903, after the boat had sunk. Captain Searles denies that he sent Johnson to examine the boat, but does not dispute the fact that Johnson did examine her.

This was all the material testimony, whereupon defendants asked for a peremptory instruction, which was granted by the court, and Searles appeals to this court, and assigns that "the court erred in granting the peremptory instruction for the de-

feudant." There were several other assignments of error; but, since the discussion of this one brings into review the whole case, we do not deem it necessary to set out the others in full.

The insurance policy expressly provides that there shall be no abandonment as for a constructive total loss, in consequence of any loss or damage, unless the cost of the necessary repairs required solely by the disaster, exclusive of cost of raising or rescuing the vessel and taking her to the dock and any other general average charges, be equivalent to seventy-five per cent of the agreed value as specified in the contract of insurance. There are many definitions as to what constitutes a constructive total loss, and, when a constructive total loss is claimed because of damage done the vessel by the perils insured against, the English and American authorities are not in accord as to the extent of the damage required before the insured is justified in abandoning the vessel, and claiming the amount insured for as being due him on account of a constructive total loss. But we have no concern with the conflict of decisions, since the insurance company by express stipulation in the contract of insurance has removed that question from the controversy by stipulating what amount of damage shall constitute a constructive total loss, since it is provided in clause 8 of the policy that "there shall be no abandonment as for a constructive total loss in consequence of any loss or damage, unless the cost of the necessary repairs required solely by the disaster (exclusive of the cost of raising or rescuing the vessel and taking her to the dock and any other general average charges) be equivalent to seventy-five per cent of the agreed value of the vessel as specified herein." Therefore, as the facts in this case show that the damage to the vessel was caused by a storm on the river, one of the perils insured against under the policy, we may define a constructive total loss, as applied to this case, to be such a loss as that the repairs made necessary thereby, exclusive of raising or rescuing the vessel and taking her to the dock, would be equivalent to seventy-five per cent of her value. 14 Ency.

Law (1st ed.), 390, and authorities there cited; Vance on Ins., 557.

It was incumbent on appellant to make this proof in the court below, and we think that he utterly failed to do so. The defendants were entitled to the peremptory instruction on appellant's own testimony. It is manifest that appellant's barge was damaged by the storm, and there is a partial loss clause in the policy of insurance, and it may be that he could have maintained his suit for the damage sustained under the partial loss clause, but no suit is sought to be maintained on that ground; appellant declaring solely on the abandonment clause of the policy claiming a constructive total loss. Appellant not only fails to make out a case, but the defendants show beyond dispute, putting the testimony most strongly for appellant, that to repair the damage caused solely by the disaster, the only damage that appellees had undertaken to insure against, would cost less than twenty-five per cent of $3,000, the agreed value of the vessel. Under these conditions the appellant undertakes to abandon the property under clause 8 of the policy, in violation of the stipulation in said policy that he shall only have the right to do so when the damage done shall be equivalent to seventy-five per cent of the agreed value. The clause in the insurance policy which enables him to make an abandonment in a proper case, and determining the conditions under which the abandonment may be made, is just as much a part of the insurance policy as any other stipulation or condition contained in the policy.

Appellant undertakes to show his right to abandon the vessel as for a constructive total loss by showing that there were no facilities at Vicksburg for raising a vessel, and it was therefore impossible for him to do so, and that the nearest dock where the vessel could have been docked was New Orleans, some four hundred miles away by river, and makes this an element of damage, showing as to him the boat was worthless, and therefore he had the right, under his policy, to abandon and sue for a constructive total loss. According to the testimony in this case, when even

this is conceded, the whole damage, including this, does not amount to seventy-five per cent of the agreed value. But the insurance company has not undertaken to guaranty facilities at Vicksburg for raising vessels, nor cost of carrying them to the dock. The policy was given by the insurers and accepted by the insured under such conditions and with such facilities as Vicksburg possessed. The policy states that it insures against the "unavoidable dangers of rivers," etc., not against lack of facility or expense in carrying a damaged vessel to the dock. The policy expressly stipulates against cost of raising or rescuing the vessel and taking her to dock. Therefore, in determining whether appellant had the right to abandon the vessel and sue for a constructive total loss, we consider only the cost of necessary repair, caused solely by the disaster, which in this case is shown to be much less than seventy-five per cent of the agreed value. We do not say that appellant was compelled to make an effort to save the vessel before he could abandon and sue, but we do say that the conditions warranting him in abandoning it must have existed, and must have been proven by him to exist. *Soelberg* v. *Western Assurance Company*, 119 Fed. Rep., 23 ; 55 C. C. A., 601.

Appellant complains because he says that the court below stated that it was the opinion of that court that a constructive total loss had to be proven, and that proof of a total loss would not prove a constructive total or partial loss, and in support of the contention cite *Mayo* v. *India Mut. Ins. Co.* (Mass.), 25 N. E. Rep., 80 (9 L. R. A., 831; 23 Am. St. Rep., 816) ; *Heebner* v. *Eagle Ins. Co.*, 69 Am. Dec., 310, and *Insurance Co.* v. *Adams*, 123 U. S., 74, 75 (8 Sup. Ct., 68; 31 L. ed., 63). In view of the testimony in this case, which conclusively shows that, if appellant had any right to recover for a total loss, it could only have been for a constructive total loss, and the further fact that in his declaration he has declared for a constructive total loss, and all his testimony is addressed to this kind of a loss, we do not deem it necessary to pass on this action of the court; nor can we conceive how appellant could have been prejudiced in any way

by it in this case, even if the court was in error, which we do not say under the pleadings here.    Under clause 5 of the insurance policy—what is known as the "sue and labor clause"—the insurance company merely contracted for the right to have the vessel recovered and repaired themselves, if they should believe that their interests demanded it at any time, without thereby defeating their right to any defense that they might have to any claim for damage interposed by the insured; but by this clause no obligation is imposed on them to do this.    It is merely a provision in the insurance policy inserted for the purpose of protecting the insurer in case it should undertake to assist in the rescue of the vessel.    *Soelberg's case, supra.*

It is further argued by counsel for appellant that the acceptance of the balance of the premium of $90, after the disaster to the vessel, estops the appellees from now asserting the defense that there was no loss under the policy, and in support of his contention he cites the *Dobbins case, in* 81 Miss., 623 (s.c., 33 South. Rep., 504).    The *Dobbins case* has no application to the facts in this case.    In the *Dobbins case* there was an attempt to set up a forfeiture of the policy of insurance, after a loss had occurred, claiming that there had been a breach of the conditions of the policy in that there had been an additional insurance placed on the property without the knowledge and consent of the insurance company and in violation of the terms of the policy of insurance.    The insurance company attempted to claim the forfeiture, though it accepted the premium after the loss had occurred, and did not return or offer to return any part of the premium yet unearned.    In that case the court held that they could not do it.    *Dobbins case, supra.*    But that is not this case. The insurance company is not asserting any forfeiture of the policy, but their defense is that no such loss has occurred as that sued for by appellant.    The acceptance of the balance of the premium after the loss occurred in no way affected their right to controvert this.    See *Soelberg's case, supra.*

*Let the case be affirmed.*