**SORENSON et al. v. BOSTON INS. CO. OF BOSTON, MASS.**

Circuit Court of Appeals, Fourth Circuit.
July 5, 1927.

No. 2533.

**1. Shipping ⊜131—Shippers' specific insurance does not preclude enforcing personal liability of carrier for loss.**

Specific insurance effected by shippers does not preclude their suing to enforce personal liability of carrier for loss sustained.

**2. Insurance ⊜606(3)—Shippers receiving specific insurance might sue carrier to enforce liability, though recovery would in reality be for insurer.**

Shippers, after being advanced amount of specific insurance carried on goods, might thereafter sue carrier to enforce its liability, although recovery would be in reality for benefit of those who insured them.

**3. Insurance ⊜512—Bankruptcy of carrier would not defeat recovery by cargo owner under policy covering carrier's legal liability.**

Under policy covering legal liability for loss of or damage to merchandise, bankruptcy of carrier will not defeat recovery by shipper under policy, since under clause covering carrier's legal liability owners of cargo may recover for loss which they have sustained, and for which carrier is liable.

**4. Insurance ⊜336(1)—Policy insuring carrier and excluding merchandise specifically insured held only to limit recovery in case of specific insurance to carrier's legal liability.**

Clause in policy of insurance covering legal liability of carrier, relative to policy not covering merchandise on which shippers had effected specific insurance, *held* not to preclude recovery under legal liability clause, where such insurance existed, but only limited right of recovery under policy in such case to legal liability of carrier.

**5. Insurance ⊜133(1)—Designation of cargo owners as intended to be insured under policy by president of carrier, and trustee in bankruptcy after carrier's bankruptcy, held sufficient.**

Designation of cargo owners as having been intended to be insured under policy insuring carrier by president of carrier corporation, and by trustee in bankruptcy under order of court after carrier had been adjudged bankrupt, *held* sufficient designation.

**6. Insurance ⊜273—Unseaworthiness of lighter, with privity and knowledge of owner, did not avoid policy covering cargo, in absence of fraud or willful exposure.**

Policy insuring carrier for loss of property transported *held* not avoided by sinking of lighter, due to its unseaworthiness, existing with privity and knowledge of owner, in absence of fraud or willful exposure to danger.

**7. Insurance ⊜416—Ordinarily negligence will not defeat recovery under insurance policy, in absence of fraud or willful exposure.**

Negligence ordinarily will not defeat recovery under marine policy of insurance, it being necessary that there be either fraud or willful exposure to danger.

**8. Insurance ⊜417—Fraud or willful exposure, defeating insurance policy, held not to necessarily exist in privity and knowledge of unseaworthiness, defeating limitation of liability.**

Fraud or willful exposure to danger, sufficient to defeat recovery under policy of insurance, does not necessarily exist in privity and knowledge of unseaworthiness of vessel carrying insured goods, which will defeat limitation of liability under statutes relating thereto.

Appeal from the District Court of the United States for the District of Maryland, at Baltimore; Morris A. Soper, Judge.

Suit by John S. Sorenson and another, copartners trading under the name of Sorenson & Nielsen, and another, against the Boston Insurance Company, of Boston, Mass. From a decree of dismissal (10 F.[2d] 563) libelants appeal. Reversed and remanded, with directions.

Frank B. Ober, of Baltimore, Md. (Janney, Ober, Slingluff & Williams, of Baltimore, Md., and Bigham, Englar & Jones and D. Roger Englar, all of New York City, and Robert France, of Baltimore, Md., on the brief), for appellants.

George W. P. Whip, of Baltimore, Md. (Lord & Whip, of Baltimore, Md., on the brief), for appellee.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

PARKER, Circuit Judge. On July 6, 1923, a lighter belonging to Graham & Co. undertook to transport a cargo of coffee belonging to Sorenson & Nielsen and J. Aron & Co. from the steamship Comac, then lying in the port of Baltimore, to a warehouse at Belt's wharf. The lighter sank by reason of its unseaworthiness, and limitation of liability was denied on the ground that this unseaworthiness existed with the privity and knowledge of the owner.' This suit was instituted by the owners of the coffee, to recover on a policy of insurance which had been issued by the Boston Insurance Company to Graham & Co. "on account of whom it concerns," which covered the cargo of the lighter which sank. The policy contained the following provisions:

"15. This insurance is to cover for account of the assured, as owners, common carriers, forwarders, bailees, custodians, or otherwise, and is also to cover on account of all such owner or owners of the property transported as may be after any loss designated by the assured as having been intended by it to have been insured hereunder, such designation so made in any proof or proofs of loss to be conclusive on all parties hereunder and the said assured are hereby recognized as agents and trustees of and in behalf of such owner or owners of the said property as may be designated for all purposes of this insurance with authority to bring suit in their own name to recover loss or damage thereto, and without any right on the part of the insurer to set up any exemp-

20 F.(2d)—41

tion of carrier from liability by reason of anything contained in their bills of lading or contracts of affreightment or otherwise.

"16. It is however especially agreed that this policy is not intended to insure any parcel of merchandise on any of the lighters, barges and/or scows owned or used by said assured, upon which the owner, owners and/or shippers thereof have effected specific insurance, but in all such cases the insurance hereunder shall be limited to the property rights of the assured therein and to the earned freight and advanced charges due the assured and/or its connecting lines, and the legal liability of said assured for the loss of or damage to such merchandise should any such liability exist; and in the event of any loss or damage this policy shall be forthwith reinstated and continue to cover for its original amount and an additional premium pro rata at the rate of this policy on the amount so reinstated shall be due this company for the unexpired term of this policy."

Shortly after the sinking of the lighter, the owner, Graham & Co., became bankrupt, and thereafter libelants were designated by its president and also by the trustee in bankruptcy under order of court as having been intended by the owner to have been insured under the policy. The cargo of coffee belonging to libelants was covered by specific insurance, and the companies interested therein have made loans to libelants and taken loan receipts therefor under an arrangement similar to that which was approved in Luckenbach v. McCahan Sugar Co., 248 U. S. 139, 39 S. Ct. 53, 63 L. Ed. 170, 1 A. L. R. 1522. The loss sustained by libelants was $28,634.55, but by the eighth paragraph of the policy it is provided that "this insurance shall not be called upon under the terms of this policy for any greater claim on the cargo of any one scow or lighter by any one disaster than $8,000."

The contentions of the underwriter, the Boston Insurance Company, are: (1) That libelants are not protected by the policy sued on, because they had effected specific insurance; (2) that there has been no sufficient designation of libelants as required by the policy; and (3) that the sinking of the lighter through unseaworthiness, which existed with the privity and knowledge of the owner, avoided the policy. The learned District Judge sustained the last of these contentions and dismissed the libel. 10 F.(2d) 563.

[1–3] The first question is whether the fact that libelants had effected specific insurance would preclude their suing on this policy. It

is settled that such insurance would not preclude their suing to enforce the personal liability of the carrier for the loss sustained. On the contrary, the holding is that, after being advanced the amount of such insurance, they might sue the carrier to enforce its liability, although recovery would in reality be for the benefit of those who had insured them. Luckenbach v. McCahan Sugar Co., supra; Inman v. South Carolina Ry. Co., 129 U. S. 128, 9 S. Ct. 249, 32 L. Ed. 612; The Turret Crown (C. C. A. 2d) 297 F. 766, 780. In this case, therefore, it is clear that, if the bankruptcy of the carrier had not intervened, libelants might have recovered their loss from the carrier. And it is clear, also, that in such event the carrier in turn might have recovered from the underwriter on the policy in suit; for the policy expressly provides that it shall cover "the legal liability of said assured for the loss of or damage to such merchandise, should any such liability exist." The policy, however, is not one of mere indemnity against loss, but covers the legal liability of the assured (see 36 C. J. 1096), and is for the benefit of owners of cargo as well as of the carrier. Under such circumstances, we do not think that the bankruptcy of the carrier can defeat the recovery under the policy, but that under the clause covering the carrier's legal liability, the owners of cargo may recover for loss which they have sustained, and for which the carrier is liable.

[4] It is only under the clause covering legal liability, however, that a recovery by the owners who have effected specific insurance can be had. If the policy did not contain this provision, undoubtedly the existence of the specific insurance would bar recovery. The purpose of the clause with regard thereto was to guard against double insurance on the cargo, in view of the practice on the part of carriers to provide that in case of loss the carrier should have the benefit of shipper's insurance. But, as shown above, there would be no double insurance as to the legal liability feature of the policy; for, notwithstanding specific insurance, the cargo owner could recover his loss from the carrier. On the other hand, if specific insurance by the cargo owner be held to bar recovery under the liability clause, then as to liability there is no insurance at all, and the carrier is without protection as to this feature of the risk expressly covered by the policy.

It is not thinkable that the parties should have intended that the effecting of specific insurance by cargo owners should destroy the carrier's protection against legal liability, which, as we have seen, could be enforced in favor of the insurers as well as the cargo owners themselves. It is more reasonable that the clause as to legal liability was inserted to protect against just such liability as was enforced in the case of Luckenbach v. McCahan Sugar Refining Co., supra. The clause as to specific insurance is to be construed, therefore, not as precluding recovery under the legal liability clause where such insurance exists, but as limiting the right of recovery under the policy in such case to the legal liability of the carrier. This interpretation, we think, is the one which must have been within the contemplation of the parties in view of the rules above discussed, and it is also in accord with the plain language of the policy which provides that "in all such cases [i. e., where shippers have perfected specific insurance] the insurance hereunder shall be limited to the property rights of the assured therein [i. e., the cargoes insured], * * * and the legal liability of said assured for the loss of or damage to such merchandise should any such liability exist."

[5] We see no merit whatever in the point that there has been no sufficient designation of libelants as having been intended to be insured under the policy. The designation was to be made after the loss occurred, and was to be made by Graham & Co. It was made by the president of that corporation. As Graham & Co. had been adjudged bankrupt, it was also made by the trustee in bankruptcy under order of court. We do not see what more could have been done. It is not necessary to decide whether the designation should have been made by the corporation, as the one named in the policy to make it, or by the trustee in bankruptcy, as the one who succeeded to the rights of the corporation under the policy. As it was made by both, the underwriter has no ground of complaint.

[6] This brings us to the real point in the case, and the one upon which the learned District Judge based his decision in favor of the underwriter: Was the policy avoided by the sinking of the lighter, due to its unseaworthiness, which existed to the privity and knowledge of the owner? In passing upon this question, it is important to remember that it is only upon the protection and indemnity, or legal liability, feature of the policy that recovery can be had; and consequently the question is narrowed to an inquiry as to whether the policy as to this feature of the insurance is avoided by unseaworthiness existing with the privity and knowledge of the owner. This precise question was before the Circuit Court of Appeals of the Ninth Circuit

in the recent case of Hanover Fire Insurance Co. v. Merchants' Transportation Co., 15 F.(2d) 946 (certiorari denied 47 S. Ct. 472, 71 L. Ed. ——), where, after full consideration, the conclusion was reached that the policy was not avoided. We find ourselves in accord with the conclusion reached in that case as well as the reasoning upon which it is based. See, also, Eagle Star & British Dominions Ins. Co. v. Geo. A. Moore Co. (C. C. A. 9th) 9 F.(2d) 296.

We think there can be no question that there is no implied warranty of seaworthiness in a protection and indemnity or legal liability policy. As said by Lush, J., in Joyce v. Kennard, 7 Q. B. L. R. 78, at page 82:

"This is an exceptional policy, and we have only to construe the language used; and when I look at the position of the plaintiffs and find that they are carriers upon the river, I cannot doubt the intention of the parties. The object of the plaintiffs was to secure an indemnity against any loss in whole or in part which they might sustain as carriers, and it is not a mere policy on goods. A case may be supposed in which the goods have perished and yet the underwriters might not be liable on this policy. The subject-matter insured against is the liability which the plaintiffs would sustain in respect of the goods by reason of their accepting them as carriers. I cannot interpret the words of the policy in any other sense than as importing that the underwriters undertook to be responsible to the extent of their subscriptions for all the losses, which the plaintiffs might sustain in respect of those goods, and for which they would be liable to the owners. The language has that meaning, and I do not entertain a doubt that that is what the parties intended. It is not an ordinary marine policy, but a policy of a mixed nature, the object of which was to secure to the plaintiffs an indemnity to the extent of the sum subscribed for, for any loss during the year which they might sustain by reason of their being responsible as carriers for the loss of the goods."

In discussing the same question in George A. Moore & Co. v. Eagle Star & British Dominions Ins. Co. (D. C.) 5 F.(2d) 358, 361, Judge Kerrigan gave an additional reason for holding that no such warranty is implied in a protection and indemnity policy. He said:

"If a warranty of seaworthiness was implied into this policy, it would mean that in practically every instance the insurance company had assumed no risk, because, generally speaking, a ship is not liable to the cargo unless it is unseaworthy. Under the Harter Act, the ship is not liable to the cargo unless (1) it fails in proper loading, stowage, custody, or care of cargo; or (2) unless it is unseaworthy. Cargo improperly loaded, stowed, or ventilated, as a matter of law, renders the vessel unseaworthy. Obviously such a construction is to be avoided; otherwise, libelant would have paid premiums to no avail."

[7, 8] The learned District Judge was of opinion that, even though in ordinary cases a warranty of seaworthiness might not be implied, so as to avoid a protection and indemnity policy, such policy would be avoided where unseaworthiness existed to the privity and knowledge of the assured. We do not think, however, that privity and knowledge has anything to do with the matter unless, as said in the case of Hanover Fire Ins. Co. v. Merchants' Transportation Company, supra, the privity and knowledge arose out of negligence so gross as to amount to a willful, deliberate, and intentional wrong. Negligence ordinarily will not defeat recovery under a policy of insurance; there must be either fraud or willful exposure to known danger. Orient Ins. Co. v. Adams, 123 U. S. 67, 8 S. Ct. 68, 31 L. Ed. 63; Standard Marine Ins. Co. v. Nome Beach Lighterage & Transportation Co. (C. C. A. 9th) 133 F. 636, 1 L. R. A. (N. S.) 1095. Such fraud or willful exposure to danger does not necessarily exist in the privity and knowledge of unseaworthiness which will defeat limitation of liability under the statutes relating thereto. While privity and knowledge have been spoken of as more than mere negligence, it is not meant by this that they embrace necessarily any element of fraud or willful exposure to danger. What is meant is that in privity and knowledge there is fault or knowledge personal to the owner, as distinguished from the negligence or misconduct of his agents, employees, or co-owners, without his knowledge or participation. Craig v. Continental Ins. Co., 141 U. S. 638, 12 S. Ct. 97, 35 L. Ed. 886; Pendleton v. Benner Line, 246 U. S. 353, 38 S. Ct. 330, 62 L. Ed. 770; Capitol Transportation Co. v. Cambria Steel Co., 249 U. S. 334, 39 S. Ct. 292, 63 L. Ed. 631; The Republic (C. C. A. 2d) 61 F. 109; The Annie Faxon (C. C. A. 9th) 75 F. 312; Great Lakes Towing Co. v. Mill Transportation Co. (C. C. A. 6th) 155 F. 11, 22 L. R. A. (N. S.) 769; 24 R. C. L. 1395; 36 Cyc. 417, 418.

In the case at bar it is admitted that the lighter was unseaworthy with the privity and knowledge of the owner, but there is no admission nor is there evidence to support the

view that there was fraud or willful exposure to danger. On the contrary, the finding as to privity and knowledge was based upon the failure of the superintendent to properly inspect the lighter, which had been lying light in hot weather, with the result that some of her seams had opened. There was entirely lacking any evidence of such fraud, design, or willful exposure to danger as would avoid the policy.

For the reasons stated, we think that the learned District Judge erred in dismissing the libel. The decree will be reversed, and the cause remanded to the District Court, with direction to enter a decree in favor of libelants in accordance with this opinion.

Reversed and remanded.